State ex rel. Utilities Comm. v. Public Service Co.

STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION; THE PUB-
LIC STAFF v. PUBLIC SERVICE COMPANY OF NORTH CAROLINA,
INC., AND PIEDMONT NATURAL GAS COMPANY, INC.

No. 216PA82

(Filed 28 January 1983)

1. Gas § 1; Utilities Commission § 22— supplier refunds to natural gas
utilities—statute governing distribution

The appropriate distribution of refunds received by natural gas utilities in
1978 as a result of prior period overpayments to their natural gas supplier is
governed by G.S. 62-136(c), not by G.S. 62-133(f), since the latter statute deals
only with rate changes.

2. Gas § 1; Utilities Commission § 22— conditions for distribution of refunds to
utility's customers

Prior to the 1981 amendment to G.S. 62-136(c), that statute permitted the
distribution of refunds to a utility's customers only if the following conditions
were met: (1) it was practicable to distribute the refunds; (2) the charges had
been included in rates paid by the customers; and (3) the company had a
reasonable return exclusive of the refund.

3. Gas § 1; Utilities Commission § 22— refunds to utility customers

The requirement in former G.S. 62-136(c) that refunds be made to utility
customers "in proportion to their payment of the charges refunded" con-
templates that refunds be made only to those customers who paid rates in-
cluding the producer overcharges.

4. Gas § 1; Utilities Commission § 22— natural gas refunds—distribution to
customers not required

The Utilities Commission erred in ordering natural gas utilities to pass to
their current customers refunds received from their supplier representing
overpayments for gas made from 1958 to 1971 since G.S. 62-136(c) required
distribution of the refunds to the actual customers who paid rates including
the overcharges, and such a distribution would be impracticable because the
gas companies do not have records revealing the names of customers served
during that period or the amounts of gas purchased by those customers.

Justice CARLTON concurs in the result.

Justice MEYER concurring in part and dissenting in part.

Justice EXUM joins in this opinion.

Justice MARTIN dissenting.

Justice EXUM joins in this dissenting opinion.

ON discretionary review, pursuant to G.S. 7A-31, of the deci-
sion of the Court of Appeals, 56 N.C. App. 448, 289 S.E. 2d 82

(1982), reversing an order of the Utilities Commission requiring Piedmont Natural Gas Company, Inc. (Piedmont) and Public Service Company of North Carolina, Inc. (Public Service) to distribute to current customers all refunds received from their natural gas supplier, Trans-Continental Gas Pipeline Corporation (Transco).

The refunds in question were made by Transco to Piedmont and Public Service as a result of the Federal Energy Regulatory Commission's (FERC) determination that certain of the producers and suppliers from whom Transco had purchased natural gas during the period 4 December 1958 through 31 July 1971 had charged Transco rates in excess of those which were many years later ultimately approved by the FERC. Because Transco had in turn passed these charges on to the utilities here involved in the form of higher prices, the FERC directed Transco to distribute these refunds to appellees and three other natural gas companies operating in North Carolina. These refunds were not made until 1978, even though they represented overpayments made during the period 1958 through 1971.

The total amount disbursed by Transco to Public Service Co. was $527,301. Piedmont received from Transco $777,186, $565,599 of which was attributable to Piedmont's North Carolina operations. Approximately $9,400 of this amount has previously been refunded to Piedmont's customers and is not at issue here. Thus, $556,200 is the amount which remains in dispute with respect to Piedmont.

Public Service took the questioned amount into its income statement for 1978 operations by treating this refund as a current reduction to cost of purchased gas for the fourth quarter of 1978. Piedmont, after initially crediting the refunded amount to Restricted Account No. 253, subsequently revised that initial accounting treatment and, like Public Service, took the refund into its income statement by treating the refund as a current reduction to the cost of purchased gas for the fourth quarter of 1978. The effect of this accounting treatment was to give the total benefit flowing from the refunds to the utilities' shareholders.

On 21 January 1981, the North Carolina Utilities Commission ordered Piedmont and Public Service to distribute to their current customers the total amount of the refunds received from Transco in 1978. The Commission determined that the three re-

quirements of G.S. 62-136(c) had been met and that a total refund was statutorily mandated.

The Court of Appeals (Arnold, J., with Clark, J., and Whichard, J., concurring) reversed the Commission on the theory that the statute did not contemplate refunds to current customers, but rather required that refunds be made to those customers who had actually paid the overcharges. Concluding that it would be impracticable to locate and identify these customers, they determined that the refunds were improperly ordered.

*Public Staff of the N.C. Utilities Commission, by Executive Director Robert Fischbach, Acting Chief Counsel Theodore C. Brown, Jr. and G. Clark Crampton for plaintiff appellant.*

*Boyce, Mitchell, Burns & Smith, P.A., by F. Kent Burns for defendant appellee Public Service Company of North Carolina, Inc.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Jerry W. Amos for defendant appellee Piedmont Natural Gas Co., Inc.*

BRANCH, Chief Justice.

The issue presented in instant case involves the proper distribution of refunds received by the appellee utilities as a result of prior period overpayments to their natural gas supplier.

[1] The Commission looked to G.S. 62-136(c) to determine whether the supplier refunds should be retained by the utilities or distributed to their customers. Prior to 1981, G.S. 62-136(c) provided as follows:

(c) If any refund is made to a distributing company operating as a public utility in North Carolina of charges paid to the company from which the distributing company obtains the energy, service or commodity distributed, the Commission may, if practicable, in cases where the charges have been included in rates paid by the customers of the distributing company, and where the company had a reasonable return exclusive of the refund, require said distributing company to distribute said refund among said customers in proportion to their payment of the charges refunded.

The Public Staff argues that G.S. 62-136(c) does not apply to the refunds. They contend that G.S. 62-133(f) is the applicable statute. This provision, which became effective 21 July 1971, reads as follows:

> (f) Unless otherwise ordered by the Commission subsections (b), (c) and (d) shall not apply to rate changes of utilities engaged in the distribution of natural gas bought at wholesale by the utility for distribution to consumers to the extent such rate changes are occasioned by changes in the wholesale rate of such natural gas. The Commission may permit such rate changes to become effective simultaneously with the effective date of the change in the wholesale cost of such natural gas, or at such other time as the Commission may direct. This subsection shall not prohibit the Commission from investigating and changing unreasonable rates in accordance with the provisions of this Chapter. The public utility shall give such notice, which may include notice by publication, of the changes to interested parties as the Commission in its discretion may direct.

The Public Staff urges us to find G.S. 62-133(f) controlling on the theory that these supplier refunds are, in effect, retroactive rate reductions in the utilities' wholesale cost of gas for the period 1958-1971. As such, the refunds are matters "occasioned by changes in the wholesale rate of such natural gas" as contemplated by G.S. 62-133(f). They also contend that G.S. 62-133(f) is the more specific statutory provision because it applies solely to changes in the wholesale rates of *natural gas*, whereas G.S. 62-136(c) applies to refunds received by any type of North Carolina distributing company utility.

To the contrary, we are of the opinion that G.S. 62-136(c) more specifically applies to supplier refunds received by natural gas distributing utilities. G.S. 62-133(f) is a mechanism whereby a natural gas utility may pass on to its customers supplier increases or decreases without going through the costly and protracted procedures of a general rate case. *Utilities Commission v. CF Industries, Inc.*, 39 N.C. App. 477, 479, 250 S.E. 2d 716, 717-18 (1979). G.S. 62-133(f) deals only with *rate* changes. G.S. 62-136(c), however, specifically sets forth the criteria pursuant to which *refunds* should be distributed.

We hold that G.S. 62-136(c) is the proper statute to be applied in determining the appropriate distribution of these supplier refunds.

The appellee utilities contend, however, that G.S. 62-136(c) does not govern those refunds attributable to overpayments made prior to 1 January 1964, the effective date of the statute. An examination of the Commission's orders in instant case reveals that the Commission also determined that G.S. 62-136(c) did not apply to all of the refunds received in 1978. The orders specifically provided that the refunds attributable to the years 1958 through 1963 were being distributed pursuant to the Commission's implied powers under Chapter 62. Only those refunds attributable to overpayments made after 1 January 1964 were distributed pursuant to the dictates of G.S. 62-136(c).

We conclude that this bifurcated analysis is unnecessary. G.S. 62-136(c) speaks in terms of when the refund is *received* by the utilities, not to the period of time to which the refunds relate. The statute says that "*if any refund is made*" to a public utility, the Commission may order the refund to be distributed among the utility's customers if the statutory requirements are met. Since these refunds were received by Piedmont and Public Service well after the effective date of the statute, we hold that G.S. 62-136(c) governs the distribution of *all* of the refunds at issue here.[1]

We next address the question of whether the statutory requirements of G.S. 62-136(c) have been met in this case.

[2] Prior to the 1981 amendment, G.S. 62-136(c) permitted the distribution of refunds to a utility's customers only if the following three conditions were met:

(1) It was practicable to distribute the refunds,

(2) The charges had been included in rates paid by the customers, and

---

1. Implicit in this reasoning is the conclusion that all refunds received after 28 May 1981 will be governed by the 1981 amendment to G.S. 62-136(c). 1981 Sess. Laws c. 460, s. 1. As such, the Commission will be empowered to order distribution of supplier refunds to current or past customers, by customer class or on an individual basis. The amendment clearly provides that the method and manner of distribution will be left to the Commission's sound discretion.

(3) The company had a reasonable return exclusive of the refund.

The statute provided that the refund would be distributed among the customers of the utility "in proportion to their payment of the charges refunded."

The Court of Appeals interpreted this language to mean that the refunds must be made to those customers who actually paid the overcharges. In reversing the Utilities Commission, Judge Arnold wrote:

> Determination of the identity of those customers to whom refunds might be due here, and of the relative proportion of their interests, in our view, would be impracticable since the charges in question relate to periods ranging from ten-twenty-three years prior to the supplier refunds. Therefore, one of the statutory prerequisites is unfulfilled, no refund is called for, and the Commission's contrary conclusion was erroneous.

56 N.C. App. at 450, 289 S.E. 2d at 83.

[3]   We agree with the Court of Appeals that prior to the 1981 amendment, G.S. 62-136(c) required that refunds be distributed only to those individuals who actually paid the overcharges. We see no reason to assume that the legislature intended for the utilities to refund money to individuals who could not possibly have paid any of the charges refunded, as would unquestionably be the case if these refunds were distributed to current customers as the Commission directed. The requirement that refunds be made to customers *in proportion to their payment of the charges refunded* compels us to conclude that the legislature contemplated that refunds be made only to those customers who paid rates including the producer overcharges.

Our interpretation also follows from the requirement that "the charges have been included in rates paid by the customers." Obviously, the overcharges were included, if at all, in the rates paid by customers who were receiving service from Piedmont and Public Service during the period to which these refunds relate. This evidences to us an intention of retrospective reimbursement which is not accomplished by the Commission's order in this case.

The Public Staff urges us to interpret the language "in proportion to their payment of the charges refunded" as referring to the proportion of company revenues received from each *class* of customers. Their position is that the Commission properly applied this language in ordering the utilities to distribute the refunds among current customers on the basis of, and in proportion to, the prior payment of the overcharges during 1958 through 1971 as determined by customer class.

[4] We do not agree with this interpretation. As stated earlier, we are of the opinion that the legislature intended for the refunds to be made in proportion to each customer's usage in the refund period during which he paid excess charges. We are reluctant to superimpose a requirement that the refunds be made on the basis of customer class for if this had been the legislature's intention, it would have been a simple proposition for them to have explicitly provided for such a method of distribution. We find no language in the statute requiring distribution by customer class.

Our conclusion is strengthened by the legislature's 1981 amendment to G.S. 62-136(c). It is no longer required that the refund be practicable and that the utility have a reasonable return exclusive of the refund in order for the Commission to direct a customer refund. More importantly, however, the statute no longer provides for distribution of the refunds to customers in proportion to their payment of the charges refunded. The Commission is now authorized to require the distribution of refunds "among the distributing company's customers in a manner prescribed by the Commission." Clearly, the Commission is now empowered to order the distribution of supplier refunds to either current *or* past customers, utilizing whatever method the Commission deems most appropriate.

In construing a statute with reference to an amendment, the presumption is that the legislature intended to change the law. *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E. 2d 481, 483-84 (1968). This is especially so, in our view, when the statutory language is so drastically altered by the amendment. We also consider it significant that the 1981 Session Laws, c. 460, s. 2, provide that the amendment shall not be applied retroactively. This is strong evidence that the legislature understood that the amendment occasioned a change in, rather than a clarification of, existing law.

Finally, we agree with the Court of Appeals that it would not be practicable to make refunds to those customers served by the utilities during the period to which these refunds relate. The undisputed evidence discloses that the gas companies do not have records revealing the names of customers served during that period or the amounts of gas purchased by those customers. Consequently, the practicability requirement of the statute has not been met in instant case and no refund is called for.

We hold that the Commission erred in ordering a total refund to the utilities' customers because the statute required their distribution to the actual customers who paid rates including the overcharges and such a distribution would be impracticable.

We find it unnecessary to discuss the remaining assignments of error since our holding requires that the judgment of the Court of Appeals be affirmed.

Affirmed.

Justice CARLTON concurs in the result.

Justice MEYER concurring in part and dissenting in part.

I concur with the majority opinion insofar as it holds that (1) the controlling statute in this case is G.S. § 62-136(c) which applies to refunds received by any type of North Carolina distributing company utility, (2) the distribution of all refunds *received* after the effective date of G.S. 62-136(c) and before the 1981 amendment thereto are governed by that statute as it existed before the 1981 amendment, and (3) all refunds received after 28 May 1981 will be governed by the 1981 amendment to G.S. § 62-136(c) (1981 Sess. Laws c. 460, s. 1.) which empowers the Commission in its sound discretion to order distribution of supplier refunds to current or past customers, by customer class or on an individual basis.

I cannot agree with the majority opinion insofar as it interprets G.S. § 62-136(c), as it existed prior to the 1981 amendment, to require the distribution of the refunds in question to the *actual* customers who paid rates and insofar as it holds that since such method is impractical under the facts of this case no refund is called for and the full benefit of the refunds received goes to the

utility's stockholders. This unjust result arises from the majority's misinterpretation of G.S. § 62-136(c) as it existed prior to the 1981 amendment. This misinterpretation is explained in the well-reasoned dissent of Justice Martin. Prior to 1981, G.S. § 62-136(c) provided as follows:

> (c) If any refund is made to a distributing company operating as a public utility in North Carolina of charges paid to the company from which the distributing company obtains the energy, service or commodity distributed, the Commission may, if practicable, in cases where the charges have been included in rates paid by the customers of the distributing company, and where the company had a reasonable return exclusive of the refund, require said distributing company to distribute said refund among said customers in proportion to their payment of the charges refunded.

I am of the firm opinion that the term "customers" was intended to include all customers of the company — past and present — who are ratepayers. I am likewise firmly convinced that "customers in proportion to their payment of the charges refunded" was intended to refer to the various classes of customers (i.e., residential, business, industrial, etc.) in proportion to the percentage of charges refunded paid by that customer class.

As to the majority's holding that G.S. § 62-136(c) (1975) required that refunds be disbursed only to those customers who actually paid the overcharges, I join in Justice Martin's dissenting opinion.

Justice EXUM joins in this opinion.

Justice MARTIN dissenting.

I agree with the majority that the controlling statute in this case is N.C.G.S. 62-136(c) (1975). However, I dissent from the majority's holding that this statute required that refunds be disbursed only to those customers who actually paid the overcharges. This holding vitiates the statute.

My review of the record reveals substantial, competent, and material evidence to support the Commission's findings that customers of the defendants are entitled to the refunds referred

to in the majority's opinion. The orders of the Commission are deemed prima facie just and reasonable and will be upheld on appeal when a review of the whole record fails to disclose prejudicial error and the Commission's findings are supported by competent, material, and substantial evidence. N.C. Gen. Stat. § 62-94(e) (1982); *Utilities Comm. v. Telephone Co.*, 285 N.C. 671, 208 S.E. 2d 681 (1974); *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E. 2d 705 (1972); *Utilities Commission v. R.R.*, 267 N.C. 317, 148 S.E. 2d 210, *modified on other grounds*, 268 N.C. 204, 150 S.E. 2d 337 (1966). As the Commission explained:

> During the period to which the Transco refunds here in question relate, that is December 4, 1958, through July 31, 1971, this Commission, in the course of allowing rate relief to the North Carolina gas companies here involved, which rate relief was based at least in part upon Transco's rate increases, recognized the possibility that such Transco rate increases were subject to retroactive reduction by the Federal Power Commission. Therefore, the Commission specifically directed in its Orders that any refund resulting from any such retroactive reduction was to be refunded by the North Carolina gas distribution companies to their customers.

The funds in dispute here were paid by the customers of Public Service Company of North Carolina, Inc. and Piedmont Natural Gas Company, Inc. To allow these companies to keep the refunds would unjustly enrich them at the expense of those entitled to be recompensed for the overpayments.

I dissent from the majority's view that it is not practicable to order these refunds to be disbursed to the utilities' customers. Large public utilities have a constant turnover of customers, and under these circumstances it is unreasonable to assume that the legislative intent of the General Assembly in enacting N.C.G.S. 62-136(c) (1975) was to limit refunds only to those individual customers who were in existence during the period of overcharge. People die, move, marry, divorce, and change their names; business entities merge, dissolve, liquidate, go bankrupt, and otherwise change form and name. Even modern computer record-keeping equipment does not make it practicable to require refunds to be paid to every single customer overcharged over the years. To require a thorough tracing of the identity and

whereabouts of each customer entitled to a refund due to prior period overpayments, as the majority does, would never be "practicable."

A more reasonable approach is to allow refunds to be paid to ratepayer classes who were overcharged by these utilities. Indeed, in its orders the Commission specified a practicable method by which refunds are to be calculated and distributed in accord with this approach.

1. [Each company] should determine for each of the years 1958 through 1971 the proportion or ratio of Company revenues attributable to its North Carolina operation received from each class of its firm customers.

2. [Each company] should determine the amount of the producer refunds at issue herein which are applicable to each of the years 1958 through 1971.

3. [Each company] should calculate for each of the years 1958 through 1971 the proportion of the producer refunds which should be distributed among each customer class for each of the above-listed years. This calculation will involve multiplication of each of the customer class ratios computed in accordance with subparagraph 1 above by the amount of the refund for each of the corresponding years determined pursuant to subparagraph 2 above.

4. [Each company] should then make refunds to its present customers based on each customer's actual usage for the most recent 12-month period for which data is available. The total amount of money to be refunded to individual customers among each class of service should not exceed the total refund by customer class calculated pursuant to subparagraph 3 above. Said refunds shall be made by a credit to bills or by refund checks if the refund amount is in excess of one dollar.

The Commission then went on to remark that

such procedures are entirely consistent with the refund practices and procedures historically followed by this Commission in those cases where it has been impractical to order refunds to each individual customer who may have been entitled to a refund. For instance, the refund plans which were approved

by this Commission throughout the 1960s pursuant to Orders issued in Docket No. G-100, Sub 4, generally required the utilities to make refunds to their then current customers based upon each customer class contribution to utility revenues.

This is a practical sense solution which I believe meets the test established by N.C.G.S. 62-136(c) (1975). In sum, I believe the majority's interpretation of N.C.G.S. 62-136(c) (1975) is contrary to the legislative intent that customers should receive such refunds. It will deprive consumers of a just refund while allowing these utilities a windfall of hundreds of thousands of dollars. This is an unjust result, particularly so because defendants knew that their customers would be entitled to any refund ordered by the Federal Energy Regulatory Commission based on Transco's increased rates. I vote to reverse the Court of Appeals and uphold the orders entered by the Utilities Commission.

Justice EXUM joins in this dissenting opinion.