BRADY, Justice.
Convicted sex offenders "'are a serious threat in this Nation. [T]he victims of sex assault are most often juveniles,' and '[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.'" Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1, 4, 155 L. Ed. 2d 98, 103 (2003) (citation omitted) (quoting McKune v. Lile, 536 U.S. 24, 32-33, 153 L.Ed.2d 47, 56 (2002) (plurality opinion))(alterations in original). Because of this public safety concern North Carolina, like every other state in the nation, enacted a sex offender registration program to protect the public from the unacceptable risk posed by convicted sex offenders. N.C.G.S. §§ 14-208.5 to -208.15 (2003). In the case sub judice, this Court must specifically determine whether N.C.G.S. § 14-208.11, which criminalizes a convicted sex offender's failure to register, violates the notice requirement of the Due Process Clause of the United States Constitution, either facially or as applied. Because we find no such constitutional violation, we reverse the Court of Appeals.
FACTUAL AND PROCEDURAL BACKGROUND
On 2 April 2001, defendant was arrested by Deputy Sharon Reid of the Forsyth County Sheriff's Department for failing to register as a convicted sex offender in North Carolina. On 10 December 2001, defendant was indicted by a Forsyth County Grand Jury for failure to register as a sex offender. On 28 January 2002, a Forsyth County Grand Jury subsequently indicted defendant for attaining habitual felon status. Defendant was tried before the Honorable William Z. Wood, Jr. at the 18 February 2002 Criminal Session of Forsyth County Superior Court.
The evidence adduced at trial established that on 20 March 2000, defendant was serving an active sentence in the custody of the South Carolina Department of Corrections. That day, defendant was notified by prison personnel of his duty to register with the State of South Carolina as a convicted sex offender upon his release from custody. Specifically, defendant was informed that he was required to register as a result of his 20 March 1996 convictions in Pickens County South Carolina for "criminal sexual conduct with a minor first degree and assault with intent to commit criminal sexual conduct." In conjunction with this notification, defendant signed a form entitled "South Carolina Department of Corrections Notice of Sex Offender Registry," acknowledging that he had been notified, orally and in writing, of his lifelong duty to register with the State of South Carolina. This form specifically notified defendant that:
Pursuant to Section 23-3-430 of Code of Laws of South Carolina, any person who has been convicted, pled guilty or nolo contendere of offenses deemed sexual in nature must register with the Sheriff's Office in their county of residence. All offenses described in Section 23-3-430 or similar offenses from other jurisdictions are included, to include both current commitments and prior convictions.
. . . .
If an inmate who is required to register moves out of the State of South Carolina, s/he is required to provide written notice to the county sheriff where s/he was last registered in South Carolina within 10 days of the change of address to a new state.
A person must send written notice of change of address to the county Sheriff's Office in the new county and the county where s/he previously resided within 10 days of moving to a new residence. Any person required to register under this program shall be required to register annually for life.
(emphasis added). Defendant also indicated, by filling out the appropriate portions of the aforementioned form, that he would be residing in Greenville, South Carolina upon his release.
On 17 August 2000, several months after defendant was released from prison, he completed yet another registration form indicating that he had moved to Pickens County, South Carolina. However, in October 2000 defendant traveled to North Carolina, as a worker with the Dixie Classic Fair. While at the fair in Winston-Salem, North Carolina, defendant met Crystal Sunshine Miller.
At trial, Ms. Miller testified that defendant approached her and one of her daughters while they were waiting in line for an amusement ride. Defendant offered to get Ms. Miller and her daughter on the ride if she let him accompany them. Ms. Miller testified that this encounter "proceeded into me and him talking the rest of the time that the fair was here. [Defendant] decided that he had finally found somewhere and something worth staying for, so he decided to stay." Then, on the night the fair was to leave Winston-Salem, defendant's jaw was broken. The next day defendant called Ms. Miller and she told him to go to the hospital, which he did. Upon his release from the hospital, defendant "went to stay at the soup kitchen downtown."
On or about 1 November 2000, defendant moved in with Ms. Miller, who lived at 4373 Grove Avenue in Winston-Salem, North Carolina. Thus, defendant came to reside in the home that Ms. Miller shared with her two young daughters, who at the time of defendant's trial were five and two years old, respectively, and other members of her family. Over the next few months, defendant cooked, cleaned and stayed at home with Ms. Miller's children while she worked. Then, on 7 December 2000, defendant proposed marriage to Ms. Miller, and she accepted. Throughout the time defendant lived at 4373 Grove Avenue, he received mail addressed to him at Ms. Miller's home, including hospital bills, letters from his mother, and Christmas presents. Defendant continued living at 4373 Grove Avenue until 30 March 2001, when his relationship with Ms. Miller soured. Thus, defendant does not dispute that he was a resident of North Carolina at the time of his arrest.
At defendant's trial, Detective Kelly Wilkinson, of the Winston-Salem Police Department testified that he had occasion to interview defendant on 30 March 2001. Before this interview Detective Wilkinson had performed a "criminal history check" on defendant, which revealed that although defendant had registered as a convicted sex offender in South Carolina, he had failed to register upon establishing residency in North Carolina. During this interview, defendant indicated to Detective Wilkinson that he had come to North Carolina in October 2000 and that his current residence was 4373 Grove Avenue. We note that there is no indication in the record that, upon establishing a new residence in North Carolina, defendant notified the appropriate South Carolina authorities of his out-of-state move, in spite of his duty to do so. Moreover, during his interview with Detective Wilkinson, defendant acknowledged that he was required to register as a sex offender in South Carolina and admitted that he was also a convicted sex offender in the State of Florida.
Additionally, Deputy Reid, whose duties include maintaining the sex offender registry for Forsyth County, testified that North Carolina has a statutory equivalent to the South Carolina offense of criminal sexual conduct with a minor. Thus, as in South Carolina, defendant was required to register as a sex offender in the state of North Carolina. However, Deputy Reid stated that, as of the date of her testimony, defendant still had not registered as a convicted sex offender in this State.
On 21 February 2002, a Forsyth County jury found defendant guilty of failing to register as a sex offender and having attained the status of habitual felon. The trial judge determined that defendant had a prior record level of IV due in part to his eight prior convictions, four of which were felony convictions for sexual crimes. The trial court then sentenced defendant in the presumptive range for his habitual felon and failure to register as a sex offender convictions to a total minimum term of 133 months and a total maximum term of 169 months imprisonment.
Defendant entered notice of appeal on 22 February 2002, and the Court of Appeals heard oral argument on 3 December 2003. On 6 April 2004, the Court of Appeals held that "North Carolina's sex offender registration statute is unconstitutional as applied to an out-of-state offender who lacked notice of his duty to register upon moving to North Carolina." Bryant, 163 N.C. App.at 478, 594 S.E.2d at 203. However, due to the North Carolina Court of Appeals "disposition of this matter," that court did not address the remaining assignments of error raised by defendant on direct appeal. Id. at 486, 594 S.E.2d at 207.
On 15 April 2004, the State filed petitions for writ of supersedeas and discretionary review with this Court, which this Court allowed on 12 August 2004. On 18 October 2004, the American Civil Liberties Union of North Carolina Legal Foundation filed a motion for leave to file amicus curiae brief, which was allowed that day. This Court heard oral argument on 7 December 2004.
THE NORTH CAROLINA SEX OFFENDER REGISTRATION PROGRAM
In 1994, Congress enacted legislation that conditioned continued federal funding of state law enforcement on state adoption of sex offender registration laws and set minimum standards for such state programs. Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. No. 103-322, 108 Stat. 2038 (1994) (codified as amended at 42 U.S.C. §§ 14071-14072 (2000)). A year later, the North Carolina General Assembly enacted legislation requiring convicted sex offenders to register with local law enforcement agencies in compliance with the Jacob Wetterling Act and in recognition that convicted sex offenders pose an unacceptable risk to the public. Amy Jackson Law, ch. 545, 1995 N.C. Sess. Laws 2046 (effective Jan. 1, 1996) (codified as amended at N.C.G.S. § 14-208.5 to -208.15). And, as the United States Supreme Court recently acknowledged, "[b]y 1996, every State, the District of Columbia, and the Federal Government had enacted some variation of [a sex offender registration and community notification program]." Smith v. Doe, 538 U.S. 84, 90, 155 L. Ed. 2d 164, 175 (2003) (holding that Alaska's Sex Offender Registration Act is nonpunitive; thus, its retroactive application does not violate the Ex Post Facto Clause of the United States Constitution).[1] Moreover, the Federal Bureau of Prisons is required to inform every sex offender incarcerated in federal penal and correctional institutions that the individual "shall be subject to a registration requirement as a sex offender in any State in which the person resides, is employed, . . . or is a student." 18 U.S.C. § 4042 (3) (2000). Thus, convicted sex offenders had been subject to registration throughout the fifty states for approximately six years when, in 2001, defendant was arrested for failing to register as a convicted sex offender in North Carolina. It should also be noted that the Commonwealth of Puerto Rico and the United States Virgin Islands enacted similar legislation a year later. 4 P.R. Laws Ann. § 535 (2002); 14 V.I. Code Ann. § 1721 (Supp. 2004). And, such legislation became effective in Guam in 1999. 9 Guam Code Ann. § 89.03 (West, WESTLAW through 2005 P.L. 28-023).
The North Carolina Sex Offender and Public Protection Registration Program is a public safety measure specifically designed "to assist law enforcement agencies' efforts to protect communities." N.C.G.S. § 14-208.5. With the creation of this program, the General Assembly explicitly recognized that "sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is of paramount governmental interest." Id.; see also Ch. 545, sec. 1, 1995 N.C. Sess. Laws at 2046. Later amendments to the registration program were adopted, further recognizing that individuals who commit certain types of offenses against minors, "such as kidnapping, pose significant and unacceptable threats to the public safety and welfare of the children in this State and that the protection of those children is of great governmental interest." Act of Aug. 28, 1997, ch. 516, sec. 1, 1997 N.C. Sess. 2276, 2276 (codified at N.C.G.S. § 14-208.5). Thus the twin aims of the North Carolina Sex Offender and Public Protection Registration Program, public safety and protection, are clearly legitimate and of great importance to the State. Cf. In re Montgomery, 311 N.C. 101, 115, 316 S.E.2d 246, 255 (1984) (holding that the North Carolina Termination of Parental Rights Act is constitutional because "[p]rotecting children from parental neglect is a sufficient reason to warrant State intervention in the traditional rights of parents to the care, custody and control of their children") .
To accomplish these goals, the North Carolina Sex Offender and Public Protection Registration Program requires every individual having a reportable conviction as defined by N.C.G.S. § 14-208.6, which includes offenses against minors and "sexually violent offenses," to register as a convicted sex offender with the sheriff of the county in which the person resides. N.C.G.S. § 14-208.7(a). If an individual convicted of such a crime moves to North Carolina "from outside this State, the person shall register within 10 days of establishing residence in this State, or whenever the person has been present in the State for 15 days, whichever comes first." Id. Additionally, non-resident workers and students who have reportable convictions or are required to register as sex offenders in their resident state must also register as a convicted sex offender in the county in which they are employed or attend school. N.C.G.S. § 14-208.7(a1).
By statute each sheriff of North Carolina's one hundred counties is required to obtain certain information from registering sex offenders, including the individual's full name, physical description accompanied by a current photograph and fingerprints, driver's license number, home address, and the "type of offense for which the person was convicted, the date of conviction, and the sentence imposed." Id. § 14-208.7(b). Much of this information then becomes public record and "shall be available for public inspection." Id. § 14-208.10(a). To better serve the public, information regarding sex offenders is now available via the Internet as part of the North Carolina Sex Offender & Public Protection Registry at http://sbi.jus.state.nc.us/DOJHAHT/SOR/. Additionally, "[t]he sheriff shall release any other relevant information that is necessary to protect the public concerning a specific person, but shall not release the identity of the victim of the offense that required registration." Id.
To require convicted sex offenders to comply with their duty to register, the General Assembly attached criminal penalties to failing to register with the sheriff of the individual's county of residence. Section 14-208.11 specifically states:
(a) A person required by this Article to register who does any of the following is guilty of a Class F felony:
(1) Fails to register.
(2) Fails to notify the last registering sheriff of a change of address.
(3) Fails to return a verification notice as required under G.S. 14-208.9A.
(4) Forges or submits under false pretenses the information or verification notices required under this Article. (5) Fails to inform the registering sheriff of enrollment or termination of enrollment as a student.
(6) Fails to inform the registering sheriff of employment at an institution of higher education or termination of employment at an institution of higher education.
(a1) If a person commits a violation of subsection (a) of this section, the probation officer, parole officer, or any other law enforcement officer who is aware of the violation shall immediately arrest the person in accordance with G.S. 15A-401, or seek an order for the person's arrest in accordance with G.S. 15A-305.
Id. § 14-208.11.
Of particular importance to our analysis is a 1997 amendment to this provision deleting the statutory mens rea requirement, which provided that only those offenders "who, knowingly and with the intent to violate" the registration provisions of N.C.G.S. § 14-208.11 were subject to conviction and punishment under the Sex Offender Registration Program. Ch. 516, sec. 1, 1997 N.C. Sess. Laws at 2281-82 (codified as amended at N.C.G.S. § 14-208.11). "In construing a statute with reference to an amendment, the presumption is that the legislature intended to change the law. This is especially so, in our view, when the statutory language is so drastically altered by the amendment." State ex rel. Utils. Comm'n. v. Pub. Serv. Co. of N.C., 307 N.C. 474, 480, 299 S.E.2d 425, 429 (1983) (citation omitted). By deleting the original mens rea requirement in N.C.G.S. § 14-208.11, the General Assembly clearly expressed its intent to make failure to register as a sex offender a strict liability offense under North Carolina law. Thus, due to the clear legislative intent and the rule of law that "due process does not require every regulatory provision to contain a state-of-mind element," Meads v. North Carolina Dep't of Agric., 349 N.C. 656, 673-74, 509 S.E.2d 165, 176-77 (1998) (citations omitted), no showing of knowledge or intent is necessary to establish a violation of N.C.G.S. § 14-208.11.
Accordingly, a defendant who has committed a registerable offense but fails to comply with the registration requirements discussed above is guilty of a Class F felony.
Although a defendant's term of imprisonment will necessarily vary under North Carolina's Structured Sentencing Act, see N.C.G.S. § 15A-1340.10 to -1340.23 (2003), we note that a defendant convicted of failing to register as a convicted sex offender with a prior record level of I could be subject to a potential minimum presumptive term of 13 to 16 months imprisonment. See id. § 15A-1340.17. Here, defendant had a prior record level of IV; thus, the minimum possible presumptive sentence for failing to register as a sex offender carried with it a minimum term of 20 months to a maximum term of 24 months imprisonment. See id.
THE CONSTITUTIONALITY OF N.C.G.S. § 14-208.11
This Court must now address whether N.C.G.S. § 14-208.11 violates the Due Process Clause of the United States Constitution. In so doing we are cognizant that the Law of the Land Clause of the North Carolina Constitution, N.C. Const. art. I, § 19, "'is synonymous with due process of law as found in the Fourteenth Amendment to the Federal Constitution.'" Rhyne v. K-Mart Corp., 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (quoting In re Moore, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976)) (internal quotation marks ommitted). Although this Court has previously "reserved the right to grant Section 19 relief against unreasonable and arbitrary state statutes in circumstances where relief might not be obtainable under the Fourteenth Amendment to the United States Constitution," Meads, 349 N.C. at 671, 509 S.E.2d at 175, we note that defendant does not seek independent relief under the Law of the Land Clause. Therefore, defendant's assertions will be considered solely in light of federal due process jurisprudence.
The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that "No person shall be . . . deprived of life, liberty, or property without due process of law." A similar requirement, that no "State [shall] deprive any person of life, liberty, or property without due process of law" is also contained in the Fourteenth Amendment to the federal constitution. Due process has come to provide two types of protection for individuals against improper governmental action, substantive and procedural due process. State v. Thompson, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998). Substantive due process ensures that the government does not engage in conduct that "shocks the conscience," Rochin v. California, 342 U.S. 165, 172, 96 L. Ed. 183, 190 (1952), or hinder rights "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325, 82 L. Ed. 288, 292 (1937), overruled on other grounds by Benton v. Maryland, 395 U.S. 784, 23 L. Ed. 2d 707 (1969). In the event that the legislation in question meets the requirements of substantive due process, procedural due process "ensures that when government action deprive[s] a person of life, liberty, or property . . . that action is implemented in a fair manner." Thompson, 349 N.C. at 491, 508 S.E.2d at 282. And it is the latter of the two, procedural due process, that defendant relies upon here. Specifically, defendant seeks to have N.C.G.S. § 14-208.11 declared unconstitutional based on allegedly insufficient notice of the existence of the criminal statute itself.
Defendant, relying almost exclusively on Lambert v. California, 355 U.S. 225, 2 L.Ed.2d 228 (1957), asserts that the State must prove "actual or probable notice of the duty to register in order to satisfy due process." Defendant contends that "[t]he Court of Appeals rightly dismissed the 'osmosis' defense in light of Congress' express requirements that state registration programs incorporate detailed notification procedures." According to defendant, "[t]hose statutes conclusively rebut the notion that states can rely on convicted sex offenders to divine their registration duties through mental telepathy or the exercise of moral imagination." Defendant's arguments reflect a clear misunderstanding of due process jurisprudence.
In addressing the facial validity of N.C.G.S. § 14-208.11, our inquiry is guided by the rule that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully." United States v. Salerno, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707 (1987). This is so, because
"[t]he presumption is that any act passed by the legislature is constitutional, and the court will not strike it down if [it] can be upheld on any reasonable ground." Ramsey v. N.C. Veterans Comm'n, 261 N.C. 645, 647, 135 S.E.2d 659, 661 (1964). An individual challenging the facial constitutionality of a legislative act "must establish that no set of circumstances exists under which the [a]ct would be valid." Salerno, 481 U.S. at 745, 95 L. Ed. 2d at 707. The fact that a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." Id.
Thompson, 349 N.C. at 491, 508 S.E.2d at 281-82. Moreover, we emphasize that "[t]he role of the legislature is to balance the weight to be afforded to disparate interests and to forge a workable compromise among those interests. The role of the Court is not to sit as a super legislature and second-guess the balance struck by the elected officials." Henry v. Edmisten, 315 N.C. 474, 491, 340 S.E.2d 720, 731 (1986). Rather, this Court must "measure the balance struck by the legislature against the required minimum standards of the constitution." Id.
Accordingly, we note that the prerelease notification provision of N.C.G.S. § 14-208.8(a)(1) states that "[a]t least 10 days, but not earlier than 30 days" before the release of a person subject to registration as a sex offender from a penal institution, an official of the penal institution must inform that individual of his duty to register under the Sex Offender and Public Protection Registration Program. The penal institution official must also require the individual to sign a written statement that he or she was so informed. Id. Therefore, by the very terms of the statute, those individuals released from a North Carolina penal institution and subject to punishment for failure to register pursuant to N.C.G.S. § 14-208.11, are required to have actual notice of their duty to register, and defendant cannot "'establish that no set of circumstances exists under which the [a]ct would be valid.'" Thompson, 349 N.C. at 491, 508 S.E.2d at 282 (quoting Salerno, 481 U.S. at 745, 95 L.Ed.2d at 707). Accordingly, we find that N.C.G.S. § 14-208.11 is facially constitutional.
With respect to whether N.C.G.S. § 14-208.11 is unconstitutional as applied to defendant, a convicted sex offender in another jurisdiction who subsequently moved to North Carolina, defendant argues that the State must prove actual or probable notice of his duty to register to satisfy the due process notice requirement of Lambert v. California, 355 U.S. at 229-30, 2 L.Ed.2d at 232. Defendant argues that although he registered as a convicted sex offender in South Carolina, "[n]othing in the registration form or the statutes mentioned any duty to register outside of South Carolina." Thus, defendant alleges, due to his lack of actual notice, his convictions for failure to register as a sex offender and for having attained the status of habitual felon were obtained in violation of the Due Process clause of the United States Constitution. We find defendant's arguments wholly unpersuasive. We first note that the United States Supreme Court has acknowledged:
The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system. See, e. g., United States v. Smith, 5 Wheat. 153, 182 (1820) (Livingston, J., dissenting); Barlow v.United States, 7 Pet. 404, 411 (1833); Reynolds v. United States, 98 U.S. 145, 167, (1879); Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 68 (1910); Lambert v. California, 355 U.S. 225, 228 (1957); Liparota v. United States, 471 U.S. 419, 441 (1985) (White, J., dissenting); O. Holmes, The Common Law 47-48 (1881). Based on the notion that the law is definite and knowable, the common law presumed that every person knew the law. This common-law rule has been applied by the Court in numerous cases construing criminal statutes. See, e.g., United States v. International Minerals & Chemical Corp., 402 U.S. 558 (1971); Hamling v. United States, 418 U.S. 87, 119-124 (1974); Boyce Motor Lines, Inc. v. United States, 342 U.S. 337 (1952).
Cheek v. United States, 498 U.S. 192, 199, 112 L. Ed. 2d 617, 628 (1991).
However, more than three decades before Cheek, the United States Supreme Court created a narrow exception to the general rule that ignorance of the law is no excuse, holding that "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary" before a conviction under a general criminal registration act can stand. Lambert, 355 U.S. at 229, 2 L. Ed. 2d at 232. In Lambert, a provision of the City of Los Angeles, California Municipal Code required that all persons convicted of a felony, whether that conviction occurred in California or another state and was punishable as a felony in California, who remained in Los Angeles more than five days register as a felon with the Chief of Police. Id. at 226, 2 L. Ed. 2d at 230. The police discovered, upon defendant's arrest for "suspicion of another offense," that defendant, a resident of Los Angeles for more than seven years, had been convicted of a felony but had not registered with the Chief of Police. Id. After being convicted for failing to register, defendant appealed to the United States Supreme Court, arguing that the municipal code, as applied, denied her due process of law. Id. at 227, 2 L.Ed.2d at 230-31.
On appeal, the United States Supreme Court held that Lambert's conviction did indeed violate due process because her conduct in failing to register was "wholly passive" and "[a]t most the ordinance is but a law enforcement technique designed for the convenience of law enforcement agencies." Id. at 228-29, 2 L.Ed.2d at 231-32. However, in so holding, the Supreme Court emphasized that in Lambert, "circumstances which might move one to inquire as to the necessity of registration [were] completely lacking." Id. at 229, 2 L.Ed.2d at 232 (emphasis added). Of note, however, is the marked difference between the registration ordinance in Lambert and modern sex offender registration statutes.
In Lambert, the registration requirement was a general municipal ordinance, whereas the sex offender registration statutes enacted in North Carolina and all other states are statewide registration programs. Unlike the registration requirement in Lambert, these programs are directed at a narrow class of defendants, convicted sex offenders, rather than all felons. And, perhaps most crucially, rather than serving as a general law enforcement device, as the United States Supreme Court found the city of Los Angeles' felon registration ordinance, modern sex offender registration programs were specifically enacted as public safety measures based on legislative determinations that convicted sex offenders pose an unacceptable risk to the general public once released from incarceration. See Conn. Dep't of Pub. Safety, 538 U.S. at 4, 155 L. Ed. 2d at 103 ("'Sex offenders are a serious threat in this Nation. [T]he victims of sex assault are most often juveniles,' and `[ w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.'") (citation omitted) (quoting McKune, 536 U.S. at 32-33, 153 L. Ed. 2d at 56 (plurality opinion)) (alterations in original); N.C.G.S. § 14-208.5.
Moreover, Lambert's "application has been limited, lending some credence to Justice Frankfurter's colorful prediction in dissent that the case would stand as 'an isolated deviation from the strong current of precedents-a derelict on the waters of the law.'" Texaco, Inc. v. Short, 454 U.S. 516, 537-38 n.33, 70 L. Ed. 2d 738, 756 n.33 (1982) (quoting Lambert, 355 U.S. at 232, 2 L. Ed. 2d at 233 (Frankfurter, J., dissenting)); see also United States v. Freed, 401 U.S. 601, 609, 28 L. Ed. 2d 356, 362 (1971) (reversing lower court's dismissal of charges against defendant for unlawfully possessing an unregistered destructive device because "one would hardly be surprised to learn that possession of hand grenades is not an innocent act"); United States v. Mitchell, 209 F.3d 319, 323 (4th Cir. 2000), cert. denied, 531 U.S. 849, 148 L. Ed. 2d 78 (2000) (rejecting application of Lambert and affirming conviction of a defendant previously convicted of domestic violence for subsequent possession of a firearm because defendant's "conduct in assaulting his wife-the act that led to his misdemeanor domestic violence conviction-put [defendant] on sufficient notice" that his continued possession of a firearm was illegal); United States v. Bostic, 168 F.3d 718, 722, 724-25 (4th Cir.), cert. denied, 527 U.S. 1029, 144 L. Ed. 2d 785 (1999) (affirming defendant's conviction for violating a federal statute prohibiting a person subject to a domestic violence protective order from possessing a firearm, in spite of his lack of notice that such conduct was illegal, because when defendant threatened his estranged wife with a firearm, he violated a court order requiring him to refrain from abusing and harassing his wife, thus was no longer an "ordinary citizen" and "[l]ike a felon a person in [defendant's] position [could not] reasonably expect to be free from regulation when possessing a firearm"). Thus, it is clear that the legal maxim ignorantia juris non excusat remains the general rule. Therefore, to be entitled to relief under the decidedly narrow Lambert exception, a defendant must establish that his conduct was "wholly passive" such that "circumstances which might move one to inquire as to the necessity of registration are completely lacking" and that defendant was ignorant of his duty to register and there was no reasonable probability that defendant knew his conduct was illegal. Lambert, 355 U.S. at 228-29, 2 L. Ed. 2d at 231-32 (emphasis added). We find this case rich with circumstances that would move the reasonable individual to inquire of his duty to register in North Carolina such that defendant's conduct was not wholly passive and Lambert is not controlling. First, defendant had actual notice of his lifelong duty to register with the State of South Carolina as a convicted sex offender. Second, defendant had actual notice that he must register as a convicted sex offender in South Carolina for "similar offenses from other jurisdictions" and had a duty to inform South Carolina officials of a move out of state "within 10 days of the change of address to a new state," which defendant failed to do. Third, defendant himself informed law enforcement authorities that he had been convicted of a sex offense in Florida. These circumstances coupled with the pervasiveness of sex offender registration programs certainly constitute circumstances which would lead the reasonable individual to inquire of a duty to register in any state upon relocation.
Simply put, a convicted sex offender's failure to inquire into a state's laws on registration requirement is neither entirely innocent nor wholly passive, particularly when combined with that sex offender's violation of his previous resident state's sex offender registration laws. Furthermore, as all fifty states and the District of Columbia had enacted sex offender registration programs in compliance with federal law by 1996, approximately four years before defendant's release from prison, it would be nonsensical to allow sex offenders to escape their duty to register by moving to a state that has not provided them with actual notice of their duty to register, and then claim ignorance of the law. Cf. Oliver Wendell Holmes, Jr., The Common Law 48 (1923) ("It is no doubt true that there are many cases in which the criminal could not have known that he was breaking the law, but to admit the excuse at all would be to encourage ignorance where the law-maker has determined to make men know and obey, and justice to the individual is rightly outweighed by the larger interests on the other side of the scales.").
We find the case sub judice overflowing with circumstances "which might move one to inquire as to the necessity of registration." Accordingly, we hold that defendant's case does not fall within the narrow Lambert exception to the general rule that ignorance of the law is no excuse. Thus, because "[g]enerally a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply," Texaco, 454 U.S. at 532, 70 L. Ed. 2d at 752, we are bound by the rule that "[a]ll citizens are presumptively charged with knowledge of the law." Atkins v. Parker, 472 U.S. 115, 130, 86 L. Ed. 2d 81, 93 (1985); see also N. Laramie Land Co. v. Hoffman, 268 U.S. 276, 283, 69 L. Ed. 953, 957 (1925) ("All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them.").
We conclude that defendant, a convicted sex offender, was provided actual notice by South Carolina of his duty to register as a convicted sex offender. This notice was sufficient to put defendant on notice to inquire into the applicable law of the state to which he relocated, in this instance North Carolina. Therefore, defendant's conviction for failure to register as a sex offender under N.C.G.S. § 14-208.11 does not violate due process.
CONCLUSION
N.C.G.S. § 14-208.11 is constitutional on its face and as applied to defendant, an out-of-state registered sex offender who failed to register in North Carolina. Accordingly, the decision of the Court of Appeals is reversed and this case is remanded to that court for consideration of the remainder of defendant's assignments of error not previously addressed.
REVERSED and REMANDED.

See also Ala. Code § 13A-11-200 (1994); Alaska Stat. § 12.63.010 (Lexis 2004); Ariz. Rev. Stat. Ann. § 13-3821 (West 2001); Ark. Code Ann. § 12-12-901 (Lexis 2003); Cal. Penal Code § 290 (West 1999); Colo. Rev. Stat. Ann. § 16-22-101, 18-3-412.5 (Lexis 2004); Conn. Gen. Stat. Ann. § 54-250 (West Supp. 2005); Del. Code Ann. tit. 11, § 4120 (Supp. 2004); D.C. Code § 22-4001 (2001); Fla. Stat. Ann. § 943.0435 (West Supp. 2005); Ga. Code Ann. § 42-1-12 (Supp. 2004); Haw. Rev. Stat. § 846E-1 (Cumm. Supp. 2004); Idaho Code § 18-8301 (Michie 2004); 730 Ill. Comp. Stat. Ann. 150/1 (West Supp. 2004); Ind. Code Ann. § 5-2-12-3.5 (Lexis Supp. 2004); Iowa Code Ann. § 692A.1 (West 2003); Kan. Stat. Ann. § 22-4901 (1995); Ky. Rev. Stat. Ann. § 17.510 (Banks-Baldwin Supp. 2003); La. Rev. Stat. Ann. § 15:540 (West Supp. 2005); Me. Rev. Stat. Ann. tit. 34-A, § 11201 (West Supp. 2004); Md. Code Ann., Crim. Proc. § 11-704 (Supp. 2004); Mass. Gen. Laws Ann. ch. 22C, § 37 (West 2002); Mich. Comp. Laws Ann. § 28.721 (West 2004); Minn. Stat. Ann. § 243.166 (West Supp. 2005); Miss. Code Ann. § 45-33-25 (2004); Mo. Ann. Stat. § 589.400 (West Supp. 2005); Mont. Code Ann. § 46-23-501 (2003); Neb. Rev. Stat. § 29-4001 (Supp. 2004); Nev. Rev. Stat. 179D.350 (2003); N.H. Rev. Stat. Ann. § 651-B:1 (Supp. 2004); N.J. Stat. Ann. § 2C:7-2 (West Supp. 2004); N.M. Stat. Ann. § 29-11A-1 (2004); N.Y. Correct. Law § 168 (McKinney Supp. 2005); N.C.G.S. § 14-208.5; N.D. Cent. Code § 12.1-32-15 (Supp. 2003); Ohio Rev. Code Ann. § 2950.04 (Lexis 2003); Okla. Stat. Ann. tit. 57, § 581 (West 2004); Or. Rev. Stat. § 181.592 (2003); 42 Pa. Cons. Stat. Ann. § 9791 (West Supp. 2004); R.I. Gen. Laws § 11-37.1-1 (Supp. 2004); S.C. Code Ann. § 23-3-400 (Supp. 2004); S.D. Codified Laws § 22-22-31 (Lexis Supp. 2003); Tenn. Code Ann. § 40-39-201 (Supp. 2004); Tex. Code Crim. Proc. Ann. art. 62.01 (Vernon Supp. 2004-2005); Utah Code Ann. § 77-27-21.5 (2003); Vt. Stat. Ann. tit. 13, § 5401 (Supp. 2004); Va. Code Ann. § 9.1-900 (Lexis Supp. 2004); Wash. Rev. Code Ann. § 9A.44.130 (West Supp. 2005); W. Va. Code Ann. § 15-12-1 (Lexis 2004); Wis. Stat. Ann. § 301.45 (West 2005); Wyo. Stat. Ann. § 7-19-301 (Lexis 2003).