# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-01512-SCT

*RALPH GARRISON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/2005 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS C. LEVIDIOTIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 12/14/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

### FACTS AND PROCEDURAL HISTORY

¶1.     Ralph Garrison ("Garrison") pled guilty to one count of rape and two counts of armed robbery in January of 1978. Garrison served his sentence and was released from prison in 1992. In 2000, the Mississippi Legislature enacted Miss. Code Ann. Section 45-33-27, a statute requiring sex offenders to register with the Mississippi Department of Public Safety.

This enactment by the Legislature repealed earlier versions of sexual offender registration laws.[1]

¶2.     On September 15, 2004, Garrison was arrested for failing to register as a sex offender. Garrison was then indicted by a Lafayette County Grand Jury on one count of failure to register as a sex offender and was charged as a habitual offender. Garrison was tried in Lafayette County Circuit Court. At trial, Garrison argued that the State should be required to prove not only his act was willful, but also that he received actual notice of his duty to register. The trial court refused instructions on both issues. Garrison was convicted by a Lafayette County jury for his failure to register.

¶3.     The trial judge subsequently held a hearing as to whether Garrison was a habitual offender. The trial judge found Garrison was a habitual offender pursuant to Miss. Code Ann. Sect. 99-19-83. Garrison filed a Motion for Judgment Notwithstanding the Verdict, or in the alternative, Motion for New Trial. Both were denied by the trial court. Garrison timely filed this appeal and raises only the two following issues, *verbatim ac litteratim*: (1) Whether the trial court erred by overruling a timely Defense Motion for J.N.O.V., or in the Alternative, Motion for New Trial, when there was no proof offered as to Garrison's notice of the requirement of Miss. Code Ann. Sect. 45-33-27 for him to register as a sex offender, the law's ex post facto status as applied to Garrison; and (2) Whether the trial court determined facts giving rise to Garrison's lifetime habitual status improperly in light of **Blakely v. Washington**, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

---

[1]*See* 1994 Miss. Laws, ch. 514, §1; 1995 Miss. Laws, ch. 595, §1; 1997 Miss. Laws, ch. 454, §1; 1998 Miss. Laws, ch. 358, §1.

ANALYSIS

I.    Whether the trial court erred by overruling a timely Defense Motion for J.N.O.V., or in the Alternative, Motion for New Trial, when there was no proof offered as to Garrison's notice of the requirement of Miss. Code Ann. Sect. 45-33-27 for him to register as a sex offender, the law's ex post facto status as applied to Garrison.

¶4.    "In 1994, Congress enacted legislation that conditioned continued federal funding of state law enforcement on state adoption of sex offender registration laws and set minimum standards for such state programs." *State v. Bryant,* 614 S.E.2d 479, 482 (N.C. 2005). *See* Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. §§ 14071-14072. Further, "the United States Supreme Court recently acknowledged, 'by 1996, every State, the District of Columbia, and the Federal Government had enacted some variation of [a sex offender registration and community notification program].'" 614 S.E.2d at 482 (quoting *Smith v. Doe,* 538 U.S. 84, 90, 123 S.Ct. 1140, 155 L.Ed.2d 164, 175 (2003) (holding that Alaska's Sex Offender Registration Act is nonpunitive; thus, its retroactive application does not violate the Ex Post Facto Clause of the United States Constitution). The Mississippi statute is analogous to that of Alaska in that it establishes a civil, non-punitive regulatory scheme. The holding of the Supreme Court in *Smith v. Doe* is applicable in the case sub judice. Accordingly, Garrison's ex post facto argument is without merit.

¶5.    Although not artfully pled, Garrison's claims that he lacked notice of the registration requirement which resulted in a denial of his constitutional right to due process, as

promulgated by the United States Supreme Court in ***Lambert v. California,*** 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). This issue was raised at trial and in this appeal.

¶6. The ***Lambert*** decision is very constricted. Likewise today's ruling is constricted to the facts of this case and should not be construed or utilized for precedent except in limited circumstances. The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system. ***Bryant***, 614 S.E.2d at 486. *See, e. g.,* ***Liparota v. United States,*** 471 U.S. 419, 441, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (White, J., dissenting)***; Lambert v. California,*** 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); ***Shevlin-Carpenter Co. v. Minnesota,*** 218 U.S. 57, 68, 30 S.Ct. 663, 54 L.Ed. 930 (1910); ***Reynolds v. United States,*** 98 U.S. 145, 167, 25 L.Ed. 244 (1879); ***Barlow v. United States,*** 7 Pet. 404, 411, 8 L.Ed. 728 (1833); ***United States v. Smith,*** 5 Wheat. 153, 182, 5 L.Ed. 57 (1820) (Livingston, J., dissenting); O. W. Holmes, Jr., The Common Law 47-48 (1881).

¶7. Mississippi jurisprudence on this issue is likewise deeply rooted. "It is a familiar rule that ignorance of the law excuses no one, or that every person is charged with knowledge of the law." ***Hoskins v. Howard,*** 214 Miss. 481, 59 So.2d 263, 269 (1952). *See also* ***Whitton v. State,*** 37 Miss. (8 George) 379, 382 (1859). However, the ***Lambert*** Court deviated from the long-established principle of *ignorantia juris non excusat*, and we are bound to follow the rule of law.

¶8. ***Lambert*** has been distinguished on sixty-three separate occasions and criticized on three, including by the Fifth Circuit. However, it is not the prerogative of this Court to

4

question the wisdom or fallacy upon which the Supreme Court decided **Lambert.** This Court notes that it gave due regard to the sound, well-reasoned dissent in **Lambert** which stated,

> The present laws of the United States and of the forty-eight states are thick with provisions that command that some things not be done and others be done, although persons convicted under such provisions may have had no awareness of what the law required or that what they did was wrongdoing.... Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of *mala in se.*

**Lambert v. California,** 355 U.S. 225, 231, 78 S. Ct. 240, 244, 2 L.Ed.2d 228 (1957) (Frankfurter, J., dissenting). The **Lambert** dissent further warned the majority's decision would "turn out to be an isolated deviation from the strong current of precedents- a derelict on the waters of the law." *Id.* at 232 (Frankfurter, J., dissenting). Nonetheless, the Supreme Court has not overruled **Lambert**; and therefore, we are bound to follow it. This Court recognizes, as state court jurists, we are constrained to follow the mandate of the U.S. Supreme Court in order to perform our constitutional duty.

¶9.     Furthermore, today's decision should not overshadow the noble intent of the Legislature in enacting sex offender registration laws, as the "victims of sex assault are most often juveniles and when convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." **Bryant,** 649 S.E.2d at 487.

5

¶10. In light of today's decision, we re-affirm our jurisprudence and precedent. Except in the most limited of circumstances, *Lambert* like, a claim of ignorance of the law will be soundly rejected by this Court.

¶11. The issue of whether Garrison, beyond a reasonable doubt, had actual or probable knowledge of the duty to register as a sex offender is a factual issue for a jury to decide. Garrison requested jury instructions requiring notice, which were refused. In the limited context presented by this case, that refusal was error.

¶12. *Lambert* states, "The question is whether a registration act of this character violates due process where it is applied to a person who has no actual knowledge of his duty to register *and* where no showing is made of the probability of such knowledge." *Lambert v. California,* 355 U.S. at 228 (emphasis added). The *Lambert* Court established the following guidelines: In cases where circumstances are completely lacking which might move one to inquire as to the necessity of registration and the defendant's conduct is merely passive, the State must prove actual knowledge of the duty to register *or* proof of the probability of such knowledge and a subsequent failure to comply with the duty to register. *See Lambert,* 355 U.S. at 228-29.

¶13. In order to sustain a conviction, the jury must find beyond a reasonable doubt that the State has proved that Garrison had actual knowledge of the duty to register, or that the State proved the probability of such knowledge. If, however, the State fails to convince the jurors beyond a reasonable doubt that Garrison knew of the duty to register or of the probability of such knowledge, then the defendant should be exonerated.

6

**II.** **Whether the trial court determined facts giving rise to Garrison's lifetime habitual status improperly in light of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).**

¶14.    As we are remanding this case for a new trial, we also address Issue II. Garrison's claim of a violation of his rights in light of ***Blakely v. Washington,*** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), is not well founded as ***Blakely*** is distinguishable from the case sub judice. ***Blakely*** contested a State of Washington sentencing guideline statute and procedure which allowed additional fact finding by a trial judge, for the purpose of enhancing punishment, after Blakely had pled guilty. In the case sub judice, the trial court neither undertook, nor made separate findings of fact, related to the crime of failure to register as a sex offender. The post jury verdict hearing conducted by the trial judge was relegated to proof regarding prior convictions for four separate felonies, all to which Garrison had pled guilty.

¶15.    This Court must be vigilant in its duty to strictly comply with the recidivism statutes enacted by the Legislature. The statute at issue, Miss. Code Ann. Sect. 99-19-83, is a sentencing statute. "The relevant statutory subject matter is recidivism. That subject matter- prior commission of a serious crime- is as typical a sentencing factor as one might imagine." ***Almendarez-Torres v. United States,*** 523 U.S. 224, 230, 118 S.Ct. 1219, 1224, 140 L.Ed.2d 350, 359 (1998) (citations omitted).

¶16.    ***Almendarez-Torres*** further holds,

>       First, the sentencing factor at issue here--recidivism--is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence. See, *e.g.,* ***Parke v. Raley****,* 506 U.S. 20, 26, 113 S.Ct. 517, 521-522,

121 L.Ed.2d 391 (1992) (Recidivism laws "have a long tradition in this country that dates back to colonial times" and currently are in effect in all 50 States); U.S. Dept. of Justice, Office of Justice Programs, Statutes Requiring the Use of Criminal History Record Information 17- 41 (June 1991) (50-state survey); USSG §§ 4A1.1, 4A1.2 (Nov. 1997) (requiring sentencing court to consider defendant's prior record in every case). Consistent with this tradition, the Court said long ago that a State need *not* allege a defendant's prior conviction in the indictment or information that alleges the elements of an underlying crime, even though the conviction was "necessary to bring the case within the statute." *Graham v. West Virginia*, 224 U.S. 616, 624, 32 S.Ct. 583, 585-86, 56 L.Ed. 917 (1912). That conclusion followed, the Court said, from "*the distinct nature of the issue,*" and the fact that recidivism "does not relate to the commission of the offense, *but goes to the punishment only,* and therefore ... may be subsequently decided." *Id.* at 629, 32 S.Ct. at 588 (emphasis added).

523 U.S. at 243-44.

¶17.  Recidivism statutes were again addressed in *Apprendi v.New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In the case sub judice, the trial judge received evidence regarding Garrison's four prior felony convictions, all of which Garrison had admitted and as the *Apprendi* Court noted in reference to *Almendarez-Torres,* "all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own- no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court." *Id.* at 488. We find this case to be no different.

¶18.  The requirements of the statute were met when it was established that the sentences of Garrison's prior federal and state felony convictions for uttering a forgery ran concurrently, and Garrison was incarcerated in a federal and state penitentiary for more than

8

one year, and indeed was on parole for the federal conviction at the time he committed the rape and robberies.

¶19.    Further, the rape and robberies constituted two separate felonies pursuant to Miss. Code Ann. Sect. 99-19-81, and Garrison served more than one year on each. There were two separate victims and two types of criminal intent were necessary to carry out these crimes. "We have on several occasions held that 'priors' arising out of incidents occurring on the same date may nevertheless be 'separate incidents at different times....'" *Pittman v. State,* 570 So.2d 1205, 1207 (1990). *See Nicolaou v. State,* 534 So.2d 168, 173 (Miss. 1988); *Jackson v. State,* 518 So.2d 1219 (Miss. 1988); *Burt v. State,* 493 So.2d 1325, 1329 (Miss. 1986); *see also Crawley v. State,* 423 So.2d 128, 129 (Miss. 1982).

¶20.    Accordingly, this second issue raised by Garrison has no merit.

## CONCLUSION

¶21.    The circuit court's judgment is reversed, and this case is remanded to the Circuit of Lafayette County for a new trial consistent with this opinion.

¶22.    **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J., AND IN PART BY DICKINSON, J.**

**EASLEY, JUSTICE, DISSENTING:**

¶23.    The majority's decision today to reverse Garrison's conviction and remand this case for a new trial leaves me no alternative other than to dissent. While I do not concur with the

9

majority's decision to reverse Garrison's conviction and remand for a new trial, I also do not agree with the separate opinion, concurring in part and dissenting in part, that this Court's majority opinion is "a futile attempt to provide a substitute for justice" by remanding for a new trial.

¶24. The majority opinion requires that, on remand in order to sustain a conviction, the State must produce sufficient credible evidence that Garrison actually knew of his duty to register or provide sufficient credible evidence that Garrison probably knew of his duty to register. However, the record reveals that the issue of whether Garrison had notice of his duty to register was placed before the jury. The jury heard testimony from Officer Terry Prestige that a sex offender would have had been provided notice of his duty to register in the news.

¶25. However, the defense cross-examined Officer Prestige as to what news programs would have given Garrison notice or when registration was last in the news. Officer Prestige did not identify when the notice was on the news. Officer Prestige further testified that he did not contact Garrison to provide notice. Sheriff Buddy East testified on cross-examination that he did not notify Garrison that he had to register as a sex offender.

¶26. The trial court received State's exhibit 5 which is a stipulation by the defendant, Ralph Garrison, and the State of Mississippi. The stipulation was read to jury and provided, "The State and Defendant, Ralph Garrison, stipulate that the defendant is a prior convicted sex offender, having been convicted in 1978, of a sexual offense felony which requires that the

10

defendant register as a sex offender." The defense did not object when the stipulation was read to the jury.

¶27. The defense rested without calling any witnesses. After deliberating, the jury convicted Garrison for failing to register as a sex offender. Therefore, the jury considered the issue of whether Garrison received notice of his duty to register. I would affirm the circuit court's judgment.

¶28. Accordingly, I must respectfully dissent.

**GRAVES, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶29. I concur in part that Garrison's conviction and sentence should be reversed. However, because the majority's application of the Mississippi Sex Offenders Registration Law is unconstitutional in this instance, I respectfully dissent in part. The decision of the majority is an ex post facto application of the law and one which results in a denial of due process. I would reverse and render.

¶30. Garrison pleaded guilty to two counts of armed robbery and one count of rape in 1978, was sentenced to fifteen years' imprisonment on each of the robbery charges and thirty years on the rape charge (all sentences to be served concurrently), and was incarcerated in the state penitentiary until his lawful release in 1992. In 2000, the Mississippi Legislature enacted Miss. Code Ann. Section 45-33-27 (2000),[2] which requires convicted sex offenders to

---

[2] Miss. Code Ann. Section 45-33-27 provides, in relevant part:
(5) An offender moving to or returning to this state from another

11

register with the Mississippi Department of Public Safety (MDPS).[3] Garrison was arrested

on September 15, 2004, for failing to register as required by law. Only after Garrison was

arrested did officers with the Sheriff's Department perform their duties to register Garrison

as a sex offender and explain to him his duty to register. Garrison was subsequently indicted

by the Lafayette County Grand Jury on one count of failure to register as a sex offender and

charged as a habitual offender under Miss. Code Ann. Section 99-19-83 (Rev. 2000).

¶31.    Garrison was tried in Lafayette County Circuit Court. Immediately prior to trial,

Garrison and the State stipulated to his prior conviction of a crime that would require him to

register as a convicted sex offender. Testimony introduced at trial indicated that Garrison

was living and working within Lafayette County since at least June 25, 2004, more than two

months before he was arrested. Garrison rested without putting on a defense. The jury

returned a verdict of guilty on April 7th. The next day, the trial judge began a hearing to

---

jurisdiction shall notify the Department of Public Safety ten (10) days
before the person first resides in or returns to a county in this state and shall
register with the department within ten (10) days of first residing in or
returning to a county of this state. The offender must then present himself
to the sheriff of the county in which he intends to reside to provide the
required registration information.
        (6) A person, other than a person confined in a correctional or
juvenile detention facility or involuntarily committed on the basis of mental
illness, who is required to register on the basis of a sex offense for which a
conviction, adjudication of delinquency or acquittal by reason of insanity
was entered prior to July 1, 1995, shall register with the sheriff of the
county in which he resides no later than August 15, 2000.

[3]Mississippi enacted earlier versions of a sexual offender registration law which
were repealed in 2000 by enactment of Miss. Code Ann. Sections 45-33-21 to 45-33-57.
See, e.g., 1994 Miss. Laws 514; 1995 Miss. Laws 595; 1997 Miss. Laws 454; 1998
Miss. Laws 358.

determine Garrison's status as a habitual offender, the hearing was continued until a later date, and the judge ultimately found Garrison qualified for habitual offender status under Section 99-19-83 and sentenced Garrison to life imprisonment without possibility of parole. Garrison filed a motion for a judgment notwithstanding the verdict (JNOV) with alternative motions for a new trial or reconsideration of sentence, which the trial court denied. Garrison then filed his timely notice of appeal. On appeal, Garrison raises two issues and alleges that: (1) the trial court erred in failing to grant his Motion for JNOV because Miss. Code Ann. Section 45-33-27 is an ex post facto law as applied to him; and (2) even if his conviction was not improperly obtained, the trial court erred in making factual findings regarding his prior convictions without submitting those questions to the jury at his habitual offender hearing.

I.    **Whether the Mississippi Sex Offenders Registration Law is an Unconstitutional Ex Post Facto Law as Applied to Garrison, thus Warranting a Grant of His Motion for JNOV.**

¶32.    In reviewing a trial court's ruling on a motion for a judgment notwithstanding the verdict, which challenges the sufficiency of the evidence, this Court has stated as follows:

> [W]e must, with respect to each element of the offense, consider all of the evidence - not just the evidence which supports the case for the prosecution - in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996) (citing *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987)).

13

### A. Due Process

¶33. The majority relies on ***Lambert v. California***, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), in analyzing Garrison's claim that he lacked notice. In ***Lambert***, the United States Supreme Court found that the appellant's due process rights were violated by a city ordinance that made it a violation for a convicted felon to be within the City of Los Angeles for more than five days without registering as a convicted felon. The appellant had been given no notice of her duty to register. The ***Lambert*** Court noted that the "appellant on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent." ***Id***. at 229. The Court then ruled that "[w]here a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process." ***Id***. at 229-30. The majority in the instant case erroneously quotes the ***Lambert*** Court's recitation of the issue as being the holding. Here, the majority fails to acknowledge the ***Lambert*** Court's further statement that "[w]ere it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community." ***Id***. at 230.

¶34. Other courts have interpreted the standard established in ***Lambert.*** In ***United States v. Mancuso,*** 420 F.2d 556 (2d Cir. 1970), the United States Court of Appeals for the Second Circuit dismissed an indictment for failure to provide notice of a federal statute requiring any citizen convicted of certain drug offenses to register with customs officials upon leaving and entering the country. The Second Circuit did not take issue with the trial court's finding that

14

the defendant did not have knowledge of the registration requirement despite the introduction of evidence by the prosecution that there were signs at the airport. The court further applied the standard established in *Lambert:*

> On practical, purposive grounds, it is difficult to understand how elimination of the requirement of knowledge would have furthered the Congressional aim to make detection of illegal narcotics importation easier. The primary purpose of law, and the criminal law in particular, is to conform conduct to the norms expressed in that law. When there is no knowledge of the law's provisions, and no reasonable probability that knowledge might be obtained, no useful end is served by prosecuting the "violators." Since they could not know better, we can hardly expect that they should have been deterred. Similarly, it is difficult to justify application of criminal punishment on other traditional grounds such as retribution, rehabilitation or disablement. Without knowledge, the moral force of retribution is entirely spent; we do not rehabilitate conduct that is by hypothesis not faulty; and there is little to recommend incarcerating those who would obey the law if only they knew of its existence.

*Mancuso*, 420 F.2d at 558-59 (citations omitted). The court further stated:

> And finally, we are presented with that rare instance in which overturning a criminal conviction will in all probability lead to improved enforcement of the underlying act. The hallmark of this case is sloppiness on the part of those charged with responsibility for enforcing the statute. The total effort to inform those likely to be affected by the provisions of section 1407 seem to have consisted of a few signs posted in crew entrances at airports, in a few places near customs stations, and at other odd locations ill-designed to bring them to public notice of travelers generally.
>
>    . . . .
>
> Thus a simple notice provided with each passport application, or a printed form given to narcotics violators on their conviction, warning them of the requirement to register, would provide both the notice and knowledge necessary to sustain a criminal conviction and to ensure that the aim of the statute would be fulfilled.

*Id*. at 559.

¶35.   The First Circuit has likewise considered similar cases.  In ***United States v. Meade***, 175 F.3d 215 (1st Cir. 1999), the court distinguished ***Lambert*** in a case involving a federal law making it a crime for a person involved in certain domestic violence and/or stalking cases to possess firearms:

> Lambert represents one of the relatively rare instances in which the Supreme Court has concluded that, contrary to the well-established tenet, actual knowledge of the law's requirements is a precondition to criminal liability (and, therefore, ignorance of the law will excuse the defendant).  Specifically, the Lambert Court held that a law which imposed strict liability upon convicted felons for mere presence in a municipality was constitutionally infirm because, without forewarning, it punished conduct that a reasonable person ordinarily would not consider to be criminal.

*Meade*, 175 F.3d at 225 (citations omitted).  In finding ***Lambert*** inapplicable, the court stated:

> But possession of firearms by persons laboring under the yoke of anti-harassment or anti-stalking restraining orders is a horse of different hue.  The dangerous propensities of persons with a history of domestic abuse are no secret, and the possibility of tragic encounters has been too often realized.  We think it follows that a person who is subject to such an order would not be sanguine about the legal consequences of possessing a firearm, let alone of being apprehended with a handgun in the immediate vicinity of his spouse. . . .
>
> In short, we do not believe that the prohibition of section 922(g)(8) involves conduct and circumstances so presumptively innocent as to fall within the narrow confines of the Lambert exception.  We therefore reject the appellant's contention that the statute, on its face, violates due process rights of notice.

*Meade*, 175 F.3d at 226.  In another case, the First Circuit characterized the ***Lambert*** test as follows:

> At the very least, a defendant seeking to avoid prosecution on the ground of ignorance of the law must satisfy two requirements. First, his conduct must have been "wholly passive." *Lambert*, 355 U.S. at 228. Second, there must be an absence of "circumstances that should alert the doer to the consequences of his deed." *Id*.

***United States v. Denis***, 297 F.3d 25, 29 (1st Cir. 2002).

¶36. The majority is almost apologetic about its reliance on ***Lambert***. Instead of apologizing for relying on ***Lambert***, the majority should simply follow the applicable law. The majority seems to attempt to discredit the holding of the case by reciting the number of times it has been distinguished or criticized and by giving "due regard" to the dissent. It is not uncommon for a United States Supreme Court case to be distinguished or criticized by numerous cases. For example, ***Strickland v. Washington,*** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is a decision upon which this Court relies on a daily basis. ***Strickland*** has been distinguished approximately 131 times and criticized on at least four occasions. I say this to establish that it matters not in this case whether ***Lambert*** has been distinguished or criticized, but only whether it has been overruled. ***Lambert*** has not been overruled. ***Lambert*** has been distinguished on "sixty-three separate occasions" for the simple reason that it can often be distinguished.

¶37. I agree with the majority with regard to ***Lambert's*** constricted ruling, which applies only in certain situations. I also agree with the majority that the general rule regarding ignorance of the law not being a defense to criminal prosecution has no application to this

case.[4]  However, I do not agree with the majority that this matter is solely controlled by *Lambert*.  The United States Supreme Court decided *Lambert*, which involved a Los Angeles, California, municipal code, in 1957.  We do not have access to the entire Los Angeles Municipal Code in force at the time, but the portions cited in the text of the case do not contain *any* notice provision.  This is in contrast to the Mississippi Code, which requires actual notice for all classes of offenders except the class including Garrison, i.e., those who had been convicted and served their entire sentences prior to the enactment of the statutes, which is not mentioned.

¶38.   Miss. Code Ann. Section 45-33-39 requires that a defendant charged with a sex offense (for which registration is required) must be given written notification of the duty to register "on any guilty plea form and judgment and sentence forms" and also requires courts to notify an offender of registration requirements when "imposing a sentence, disposition or order of commitment following an acquittal by reason of insanity." Miss. Code Ann. Section 45-33-41 requires facilities (Department of Corrections, county or municipal jail, juvenile detention facility) that currently have charge of an offender (who is now subject to a duty to register) to provide written notification of the registration and notification requirements at the time of offender's confinement and release from confinement. Miss. Code Ann. Section 45-33-43 requires the Department of Public Safety to provide written information regarding

---

[4]I am unclear as to why the majority made such a finding, but then failed to address the fact that the trial court erroneously gave a jury instruction stating that: "The Court instructs the jury that it is no defense for a defendant to claim that he is ignorant of the law which he is accused by indictment of violating."  As stated herein, this is a rare situation where ignorance of the law will excuse the defendant.

18

the State's sex offender registration requirements to any person who "surrenders a driver's license from another jurisdiction and makes an application for a driver's license" issued by this State.

¶39. Further, Miss. Code Ann. Section 45-33-35 provides:

(2) Upon conviction, adjudication or acquittal by reason of insanity of any sex offender, if the sex offender is not immediately confined or not sentenced to a term of imprisonment, the clerk of the court which convicted and sentenced the sex offender **shall inform the person** of the duty to register and shall perform the registration duties as described in Section 45-33-23 and forward the information to the department.

(3) Upon release from prison, placement on parole or supervised release, the Department of Corrections **shall inform the person** of the duty to register and shall perform the registration duties as described in Section 45-33-23 and forward the information to the Department of Public Safety.

(4) Upon release from confinement in a mental institution following an acquittal by reason of insanity, the director of the facility **shall inform the offender** of the duty to register and shall notify the Department of Public Safety of the offender's release.

(5) Upon release from a youthful offender facility, the director of the facility **shall inform the person** of the duty to register and shall perform the registration duties as described in Section 45-33-23 and forward the information to the Department of Public Safety.

(6) In addition to performing the registration duties, the responsible agency **shall**:

(a) **Inform the person** having a duty to register that:

(i) The person shall report in writing any change of address to the department ten (10) days before changing address.

(ii) Any change of address to another state shall be reported to the department in writing no less than ten (10) days before the change of address. The offender shall comply with any registration requirement in the new state.

(iii) The person must register in any state where the person is employed, carries on a vocation, is stationed in the military or is a student.

(iv) All address verifications must be returned to the department within the required time period.

19

(v) Any change in status of a registrant's enrollment, employment or vocation at any institution of higher learning shall be reported to the department in writing within ten (10) days of the change.

(vi) If the person has been convicted of a sex offense, the person shall notify any organization for which the person volunteers in which volunteers have direct, private or unsupervised contact with minors that the person has been convicted of a sex offense as provided in Section 45-33-32(1).

(b) **Require the person to read and sign a form stating that the duty of the person to register under this chapter has been explained**.

(c) Obtain or facilitate the obtaining of a biological sample from every registrant as required by this chapter if such biological sample has not already been provided to the Mississippi Crime Lab.

Miss. Code Ann. § 45-33-35 (2004)(emphasis added). Again, this section sets out the State's duty to inform, explain and register various offenders, but specifically fails to include Garrison and any other similarly situated offenders. Those are any offenders who were convicted, sentenced and released prior to the enactment of the statute.

¶40. "When interpreting a statute that is not ambiguous, this Court will apply the plain meaning of the statute." *Arceo v. Tolliver*, No. 2005-IA-652-SCT, 2006 Miss. LEXIS 650, at *9 (Miss. Aug. 3, 2006)(citing *Claypool v. Mladineo,* 724 So.2d 373, 382 (Miss. 1998). "In construing a statute, the Court must seek the intention of the Legislature, and knowing it, must adopt the interpretation which will meet the real meaning of the Legislature." *Arceo*, at *9 (citing *Evans v. Boyle Flying Serv., Inc.*, 680 So.2d 821, 825 (Miss. 1996).

¶41. The statutes involved are comprehensive with regard to the categories of offenders required to register and to whom notice must be given. Clearly the Legislature recognized the need to give notice and, in fact, required it. Moreover, the statute explicitly sets forth, by category, all offenders to whom notice must be given. However, Garrison received

20

notice from neither the Department of Corrections, the county jail, the municipal jail, the Department of Public Safety, the clerk of the court, nor any other agency, department or organization charged with giving notice under the statute. That fact is undisputed. So while it is clear that the Legislature went to great lengths to insure that offenders received notice of the requirement to register, it failed to specifically charge anyone with the responsibility to notify those offenders like Garrison. Further, Miss. Code Ann. Section 45-33-33 states, in relevant part, with regard to failure register:

> (3) Whenever it appears that an offender has failed comply with the duty to register or reregister, the department shall promptly notify the sheriff of the county of the last known address of the offender. Upon notification, the sheriff shall attempt to locate the offender at his last known address.
>
> (a) If the sheriff locates the offender, he shall enforce the provisions of this chapter. The sheriff shall then notify the department with the current information regarding the offender.
>
> (b) If the sheriff is unable to locate the offender, the sheriff shall promptly notify the department and initiate a criminal prosecution against the offender for the failure to register or reregister. The sheriff shall make the appropriate transactions into the Federal Bureau of Investigation's wanted-person database.
>
> (4) A first violation of this chapter may result in the arrest of the offender. Upon any second or subsequent violation of this chapter, the offender shall be arrested for such violation.

Miss. Code Ann. § 45-33-33 (2000)(Amended 2004).

¶42. This provision plainly states that if the sheriff locates the offender who has failed to register, then the sheriff "shall enforce the provisions of this chapter." The chapter is "Registration of Sex Offenders." Therefore, the sheriff shall register the sex offender. The provision further provides that the sheriff shall "initiate a criminal prosecution against the

21

offender for the failure to register" when he is "unable to locate the offender." Subsection 4 is consistent with this argument as "a first violation of this chapter may result in the arrest of the offender" depending on whether he was able to be located. There is no question that the sheriff was able to locate Garrison. In fact, the testimony at trial indicated that authorities knew both Garrison's home address and his place of employment, yet no steps were taken to inform Garrison of any duty to register. Instead, officers, being able to locate the offender, arrested Garrison, then registered him and initiated a criminal prosecution in violation of the plain language of the statute. Simply put, this matter should have ended with Garrison's registration as a sex offender.

¶43. The State not only failed to prove that Garrison had actual knowledge of the statute, but also failed to prove that he had constructive knowledge. Officer Terry Prestige testified that:

> Q. So if Mr. Garrison was released in 1992 how would he have gotten word that he was suppose [sic] to register as a sex offender?
>
> A. How would he had gotten word.
>
> Q. Yes.
>
> A. As much as it's been on the news and in the paper and on TV I don't see how he would not know. You are asking me a hypothetical question but as much as it's been in the news and papers and TV and radio and everywhere else I don't see how he couldn't know.
>
> Q. What programs was it indicated that you were suppose to register as an offender?
>
> A. Ma'am?
>
> Q. What programs are you talking about?
>
> A. News for one. News just about any program.
>
> Q. And how do you know this, sir?
>
> A. Ma'am?

22

Q. How do you know this?

A. How do I what?

Q. How do you know this?

A. I watch TV.

Q. You watch TV, okay.

A. As much as it's been out in the news.

Q. How many times was it in the news this past week. [sic].

A. I didn't notify him, no ma'am if you are asking me that.

Q. You did not notify him?

A. No ma'am.

. . . .

Q. States acknowledgment of convicted sex offenders duty to register. Do you send this mail to sex offenders, convicted sex offenders?

A. No ma'am, this is what, when they register this is what I read to them and then they sign, I read to them and I sign and they sign.

Q. So do you go to their house and read it to them. How do you read it to them?

A. I don't know what you are.

Q. How do you make contact with these people?

A. How do I make contact with them. Well wherever I find them. If – the way the law is now once they come out of the state, if no one [sic] is convicted of a sex crime and they go to the penitentiary, before they are ever released this is now. This was not earlier. But this is now. Once they are released, they are, before they are released they are registered at the penitentiary. And they sent [sic] to the Department of Public Safety. The record then is sent to us once they are released they have ten days to report to us and we get their address and that. But they already have the paperwork at the Department of Public Safety because they register them at the penitentiary. . . .

¶44.   Not only did Prestige's testimony fail to establish that Garrison had notice of his duty

to register, but it also proved that the State does not even attempt to notify offenders such as

23

Garrison and instead leaves this obligation up to the news media. This is consistent with the following testimony of Sheriff Buddy East:

Q: The district attorney Mr. Creekmore just handed you this certificate from the Department of Public Safety. If you will turn to the third page the top acknowledgment of convicted sex offenders duty to register.

A: Yes ma'am.

Q: Is there something that's sent out in the mail to convicted sex offenders?

A: I don't know. Terry Prestige handles that more than I do. I don't know what's mailed out or what they get once they are convicted or whatever. But there is acknowledgment of convicted sex offenders duty to register but I'm not aware of whether they send it out or what point in time they get it.

Q: So if some one [sic], I'm considering you pretty much an expert you have been doing this for 40 years. If some one is convicted they are sentenced. They are released. They are on probation. They get off probation. Do you have any contact with a person that is free? Any kind of control over them?

A: No. No control unless they violate the law again and we have contact with them.

Q: So there would be no reason for your officers to have had any contact with Mr. Garrison after he was convicted, after he was released in 1992?

A: Well there would be no need for us to have any contact with them as far as getting registered wasn't the law back then.

¶45. News media coverage is hardly sufficient notice. Further, I must reiterate that the statutes specifically call for actual notice for all other classes of offenders. *Lambert* states:

The rule that "ignorance of the law will not excuse" is deep in our law, as is the principle that of all the powers of local government, the police power is "one of the least limitable." On the other hand, due process places some limits on its exercise. Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. . . . But the principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case.

24

*Lambert*, 355 U.S. at 228 (citations omitted).

¶46. Assuming arguendo that Garrison saw a news report regarding registration of sex offenders, the notice argument of the State is still faulty. It is unreasonable to conclude that a person who committed a crime in 1977, was convicted and sentenced in 1978, completed his sentence and was released in 1992, and then saw a report about a law which was passed in 2000, should come to the legal conclusion that the new law was applicable to his decades-old offense. Even now, this Court is not in unanimous agreement about the law's application.

¶47. Based on Mississippi Code provisions cited herein, the State has a duty to provide **actual** notice to all offenders required to register. It is absurd to now suggest that actual notice is only required for those offenders who likely have been informed of their duty to register numerous times, whereas constructive notice will suffice for that class of offenders least likely to have knowledge of any duty to register. Requiring notice achieves the intended purpose of the statute - registration of sex offenders. Law enforcement officers knew of Garrison's location. No attempt was made to inform Garrison of his duty and he was instead arrested and convicted. Reversing his conviction does nothing more than say he was not in violation of the statute for failing to register as a sex offender because he did not receive due process.

### B. Ex post facto

¶48. Garrison argues that Miss. Code Ann. Section 45-33-27, as applied to him, is an unconstitutional ex post facto law. As support for this argument, he cites this Court's opinion

in ***Knowles v. State***, 708 So. 2d 549 (Miss. 1998), which addressed ex post facto laws. As noted by Garrison, "[a]n ex post facto law is one which creates a new offense or changes the punishment, to the detriment of the accused, after the commission of the crime." ***Knowles***, 708 So. 2d at 552 (citing ***Collins v. Youngblood***, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)). The prohibition against ex post facto laws, which applies only to penal statutes, is in place "to assure that legislative acts 'give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed' and to restrict 'governmental power by restraining arbitrary and potentially vindictive legislation.'" ***Id***. (quoting ***Weaver v. Graham***, 450 U.S. 24, 28-29, 101 S.Ct. 960, 964, 627 L.Ed. 2d 17 (1981)).

¶49.　In ***Knowles***, a father was convicted for willfully refusing to pay child support for his two minor children under Miss. Code Ann. Section 97-5-3. ***Knowles***, 708 So. 2d at 551. On appeal, the father argued that he was subjected to an unconstitutional ex post facto law, since he was charged under an amended statute for actions which took place prior to the amendment. ***Id***. at 551-52. This Court noted that not only did the amended statute increase the penalty for the subject crime, it also made substantive changes to the elements of the crime which effectively took away a defense of the father that existed prior to amendment of the statute. ***Id***. at 553. We found that the indictment as charged impaired the defendant's ability to prepare a defense that was available to him prior to the statute's amendment and held that this substantive change amounted to a violation of the ex post facto clause as applied to the defendant. ***Id***. at 555.

26

¶50.    Garrison claims that the rule from **Knowles** can be applied "without any modification" to the instant case.  The State rebuts his contention and claims that the recent case of **Smith v. Doe**, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), should guide our analysis in the case at-bar.  The majority finds Garrison's argument to be without merit under **Smith**.  In **Smith**, the United States Supreme Court addressed whether the Alaska Sex Offender Registration Act was an unconstitutional ex post facto law when applied to individuals who were convicted of a sex crime prior to enactment of the registration statute.  In **Smith**, John Does I & II (and the wife of John Doe I), two individuals who were subject to Alaska's registration law, brought an action under 42 U.S.C. § 1983 to have Alaska's registration law declared unconstitutional under the Ex Post Facto Clause of Article I and the Due Process Clause of the Fourteenth Amendment of the Federal Constitution.  **Smith**, 538 U.S. at 91.  The United States District Court granted summary judgment in favor of the petitioners, but the Ninth Circuit held that the effects of the registration law were punitive and that the Act violated the Ex Post Facto Clause.[5]  **Id**. at 91-92.  The Supreme Court granted certiorari to review the decision of the Ninth Circuit.

¶51.    In determining whether a statutory scheme is penal, and thus subject to the Ex Post Facto Clause, the reviewing court must first "ascertain whether the legislature meant the statute to establish 'civil' proceedings."  **Id**. at 92 (quoting **Kansas v. Hendricks**, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed. 2d 501 (1997)).  If the legislature intended to impose punishment, the scheme is penal in nature, and no further inquiry is warranted.  **Id**.  If, on the

---

[5]  *See* **Doe v. Otte**, 259 F.3d 979 (9th Cir. 2001).

27

other hand, the legislature intended "to enact a regulatory scheme that is civil and nonpunitive," further examination is required to determine if the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Id*. (quoting *United States v. Ward*, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 65 L.Ed. 2d 742 (1980)). The *Smith* Court stated that courts should "ordinarily defer to the legislature's stated intent," and that "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id*. (citations omitted).

### 1. Purpose

¶52.    The *Smith* Court recognized that statutory construction is necessary to determine whether a statutory scheme is civil or criminal, which begins with consideration of "the statute's text and its structure to determine the legislative objective." *Id*. If the legislature did not expressly intend to punish, a court "must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Id*. at 93 (quoting *Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)). In *Smith*, the Court noted that the Alaska Legislature indicated its purpose in enacting the registration laws within the text of the statute, the purpose of the law was to protect the public from sex offenders (who posed a substantial risk of re-offending), and found that the face of the statute itself did not "suggest[] that the legislature sought to create anything other than a civil . . . scheme designed to protect the public from harm." *Id*.

28

¶53. Similar to Alaska, the Mississippi Legislature expressly stated it was enacting the Mississippi Sex Offenders Registration Law to protect the public from sex offenders, who pose a danger of recidivism, and that registration and sharing of information regarding these offenders aids law enforcement in investigating and apprehending sex offenders. *See* Miss. Code Ann. § 45-33-21 (Rev. 2004). This declaration of legislative intent indicates that the Mississippi Legislature did intend to establish a civil scheme for the public's protection in enacting the instant registration law. Additionally:

> The Legislature further finds that the system of registering criminal sex offenders is a proper exercise of the state's police power regulating present and ongoing conduct. Comprehensive registration and periodic address verification will provide law enforcement with additional information critical to preventing sexual victimization. . . .
>
> . . . .
>
> Therefore, the state's policy is to assist local law enforcement agencies' efforts to protect their communities by requiring criminal sex offenders to register, to record their addresses of residence. . . .

Miss. Code Ann. § 45-33-21.

¶54. The *Smith* Court also noted "[o]ther formal attributes of a legislative enactment" that are probative of legislative intent, including the manner of a statute's codification and the enforcement procedures that the statute establishes. *Id*. at 94 (citations omitted). In analyzing these "attributes," the *Smith* Court stated that the Alaska Legislature's codification of the Act's notification provisions within the "Health, Safety, and Housing Code" were indicative of the legislature's intent to enact a non-punitive regulatory measure, though codification of the Act's registration provisions within Alaska's criminal procedure code "might seem to point in the opposite direction." *Id*. The *Smith* Court concluded that partial

codification of the Act within Alaska's criminal procedure code was not sufficient to conclude that the Act was intended to be punitive. *Id*. at 95. The Court also found that the procedures for implementing the Act did not render it punitive (though notice of registration requirements was tied to the acceptance of pleas and entering of judgments in criminal proceedings) and noted that invocation of "the criminal process in aid of a statutory regime does not render the statutory scheme itself punitive." *Id*. at 95-96. The Court ultimately agreed with the finding of both the District Court and Court of Appeals that the Alaska Legislature intended "to create a civil, nonpunitive regime" when it enacted the States's sex offender registration law. *Id*. at 96.

¶55. In the instant case, the Mississippi Legislature codified the Mississippi Sex Offenders Registration Law in Title 45, which contains laws concerning "Public Safety and Good Order." The Legislature's placement of this registration law within the public safety provisions indicates an intent to enact a regulatory, rather than punitive, scheme. Mississippi's registration law is also similar to Alaska's in that the Department of Public Safety is authorized to adopt rules and regulations for implementing the registration scheme, *see* Miss. Code Ann. Section 45-33-35(1), which prompted the *Smith* Court to "infer that the [Alaska] legislature envisioned the Act's implementation to be civil and administrative," and supported that Court's ultimate finding that the purpose and/or intent of Alaska's sex offender registration law was "a civil, nonpunitive regime." *Id*.

¶56. Based on the similarities of the Mississippi and Alaska registration laws, the stated intent of both schemes, and the *Smith* Court's finding regarding the legislative intent of the

Alaska registration law, I find that the Mississippi Legislature expressed an intent to create a civil, regulatory scheme, rather than a penal law, in enacting the Mississippi Sex Offenders Registration Law.

## 2. Effect

¶57.    A finding that the Alaska Legislature intended to enact a non-punitive civil scheme did not end the *Smith* Court's inquiry into whether the sex offender registration law violated the Ex Post Facto Clause. The second step of this process requires an analysis of whether the "effects" of a purportedly civil statute are too punitive for the statute to retain its "civil" designation. To conduct its analysis into the effects of Alaska's registration law, the *Smith* Court employed what it denoted as the *Mendoza-Martinez* factors.[6] These factors have application in various constitutional contexts, so they are to be viewed as "useful guideposts" rather than an exhaustive or dispositive test. *Smith*, 538 U.S. at 97. The *Smith* Court primarily focused on five of the *Mendoza-Martinez* factors, addressing whether Alaska's registration law: (1) has been regarded in our history and traditions as a punishment; (2)

---

[6] The *Mendoza-Martinez* factors were articulated by the United States Supreme Court in the case of *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). The Supreme Court stated that in considering whether a statute was too punitive to be considered regulatory rather than penal, a court should address:

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment - retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . .

*Mendoza-Martinez*, 372 U.S. at 168-69.

31

imposes an affirmative disability or restraint; (3) promotes the traditional aims of punishment; (4) has a rational connection to a nonpunitive purpose; or (5) is excessive with respect to this purpose. *Id*.

¶58. The *Smith* Court found that the registration and notification provisions of Alaska's registration law did not constitute a punishment. *Id*. at 98-99. The respondents tried to liken Alaska's law to "shaming punishments of the colonial period," claiming that they would be subjected to widespread ridicule if forced to comply with the law. *Id*. at 97. However, the Supreme Court noted that "the stigma of Alaska's Megan's Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record" and recognized that our system of government "does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment." *Id*. at 98.

¶59. The next factor examined in *Smith* is whether Alaska's registration law subjects registrants to an "affirmative disability or restraint," requiring an inquiry into "how the effects of the Act are felt by those subject to it." *Id*. at 99-100. The Court found that "[t]he Act impose[d] no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint" and did not "restrain activities sex offenders may pursue but leaves them free to change jobs or residences." *Id*. at 100. The *Smith* Court noted that although a person who does not comply with the reporting requirement could be subjected to criminal prosecution, "any prosecution is a proceeding separate from the individual's original offense." *Id*. at 101-02. In contrast

32

to the Ninth Circuit below, the Supreme Court ultimately found that Alaska's "registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the Ex Post Facto Clause." *Id*. at 102.

¶60.    With regard to traditional aims of punishment, the State of Alaska conceded that its registration law might serve as a deterrent to future crimes. *Id*.  Despite such an admission, the *Smith* Court found that possible crime deterrence did not necessarily render the Act a punishment, stating that "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." *Id*. (quoting *Hudson*, 522 U.S. at 105).  The *Smith* Court also ruled that the Ninth Circuit erred in concluding that registration obligations of the Act were retributive, based on different registering requirements for different offenses (aggravated v. non-aggravated), and found instead that the requirements "are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective." *Id*.

¶61.    In considering a fourth *Mendoza-Martinez* factor, finding a rational connection between the subject statute and a non-punitive alternative purpose, the Court in *Smith* recognized that "[t]he Act's rational connection to a nonpunitive purpose is a '[m]ost significant' factor in our determination that the statute's effects are not punitive." *Id*. Though the Court of Appeals found, and the respondents conceded, that Alaska's Act had a legitimate nonpunitive purpose of "public safety, which is advanced by alerting the public to the risk of sex offenders in their communit[y]," respondents argued that the statute was not "narrowly drawn to accomplish the stated [public safety] purpose." *Id*. at 102-03 (quoting

33

*Otte*, 259 F.3d at 991). The ***Smith*** Court rejected respondents' imprecision argument, noting that "[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance," and finding that the Act did have a legitimate non-punitive purpose. ***Id***. at 103.

¶62. The last ***Mendoza-Martinez*** factor considered by the ***Smith*** Court was the excessiveness of the Act in relation to its non-punitive purpose of public safety. The ***Smith*** Court noted that the Ninth Circuit had found the Act to be too excessive because "the statute applies to all convicted sex offenders without regard to their future dangerousness" and "it places no limits on the number of persons who have access to the information." ***Id***. The ***Smith*** Court rejected the Ninth Circuit's finding, stating that "[t]he Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." ***Id***. Also, the fact that the Alaska Legislature chose to legislate sex offenders as a class, rather than requiring an individual determination of dangerousness, "does not make the statute a punishment under the Ex Post Facto Clause." ***Id***. at 104. The ***Smith*** Court also rejected the Court of Appeals' finding that the wide dissemination of information was too excessive. In reaching this Conclusion, the Supreme Court reiterated that Alaska's notification system was passive and found that "[g]iven the general mobility of our population, for Alaska to make its registry system available and easily accessible throughout the State was not so excessive a regulatory requirement as to become a punishment." ***Id***. at 105. Regarding the excessiveness inquiry, the Supreme Court stated that the relevant question "is whether the regulatory means chosen

are reasonable in light of the nonpunitive objective," not "whether the legislature has made the best choice possible to address the problem it seeks to remedy." *Id*.

### 3. Applying the Effects Test to the Instant Case

¶63. In applying the *Mendoza-Martinez* factors to the instant case, I find that Mississippi's registration law (consistent with the *Smith* Court's analysis of Alaska's registration law) is not a type of law that has been historically regarded as a punishment, nor does it impose an affirmative disability or restraint. The operation of the Mississippi law does promote one of the traditional aims of punishment, deterrence, because failure to comply with the applicable statutes subjects violators (such as Garrison) to criminal prosecution. It is also apparent that Mississippi's registration law, similar to Alaska's, has a legitimate nonpunitive purpose related to public safety, in that the law enables both law enforcement and the general public to become aware of the presence of potentially dangerous sex offenders within the various communities of this State. The most relevant inquiry to the present case is whether the Mississippi Sex Offenders Registration Law is so excessive in relation to its non-punitive purposes as to deem the Act a punishment.

¶64. The statutory scheme at issue creates different classes of offenders (unrelated to their offenses), in that the duty to register as a sex offender becomes incumbent upon different offenders at different times. For instance, an offender who is required to register based on "a conviction, adjudication of delinquency or acquittal by reason of insanity" must register within three days of the entrance of a judgment "unless the person is immediately confined or committed." Miss. Code Ann. § 45-33-27(1). If an offender is released from

35

incarceration, the Department of Corrections is required to register the offender at the time of his/her release. Miss. Code Ann. § 45-33-27(2). Any offender who moves to Mississippi must notify the Department of Public Safety 10 days before residing within the State and must register with the department within 10 days of taking up residence within the State. Miss. Code Ann. § 45-33-27(5). Offenders required to register based on "a conviction, adjudication of delinquency or acquittal by reason of insanity [] entered prior to July 1, 1995" were required to register with the sheriff in their county of residence by August 15, 2000. Miss. Code Ann. § 45-33-27(6).

¶65. A violation of these registration requirements is a felony "punishable by a fine not more than Five Thousand Dollars ($5,000.00) or imprisonment in the State Penitentiary for not more than five (5) years, or both fine and imprisonment." Miss. Code Ann. § 45-33-33(2). The statute criminalizes any "failure of an offender to provide any registration or other information, including . . . initial registration," yet it contains no language to suggest that the offender must "willfully" or "knowingly" violate the statute to be subject to a felony prosecution.[7] The registration scheme does, however, contain some notification provisions which inform "some" classes of offenders of their duty to register and the consequences of failure to comply with that duty.

¶66. Unlike offenders who are currently incarcerated for a registrable offense, who are currently facing a prosecution or pending commitment, out-of-state drivers applying for a Mississippi license, or offenders who were incarcerated or facing prosecution/commitment

---

[7] Based on the majority's interpretation of the applicable statutes.

36

at the time the registration law became effective, there is a class of offenders (of which Garrison is a member) that does not have the benefit of the procedural safeguards the Legislature put in place for other classes of offenders. The Legislature has encumbered Garrison (and other similarly-situated offenders) with an affirmative duty to register as a sex offender, a duty which came into existence after Garrison was released from incarceration (and had moved to another state) and then became binding on him when he moved back to Mississippi.[8] The Legislature, however, failed to enact any notice provisions to inform offenders such as Garrison, who left Mississippi prior to adoption of this registration law, of the duty to register upon moving into Mississippi. This omission has the effect of subjecting offenders such as Garrison to an additional punishment.

¶67. The absence of procedural safeguards for this class of offenders works as a punishment to those who, like Garrison, commit a felony merely by being present in the State for more than ten days without registering. This is not a crime of "commission," which would likely trigger a warning flag that the action may be in violation of moral standards or public decency and within the realm of actions one should know is improper, but one of "omission," and it criminalizes a failure to act without properly notifying an entire class of registrants of the obligation to register. As noted by the *Lambert* Court:

> Registration laws are common and their range is wide. Many such laws are akin to licensing statutes in that they pertain to the regulation of business activities. But the present ordinance is entirely different. Violation of its provisions is unaccompanied by any activity whatever, mere presence in the

---

[8] Though Garrison put on no defense at trial, his attorney made a proffer on residency that Garrison lived in Tennessee from 1995 until 2003, when he moved back to Mississippi.

city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking. . . . Nevertheless, this appellant on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty even though her default was entirely innocent.

*Lambert*, 355 U.S. at 229 (citations omitted). Furthermore, failure to register is a felony offense no matter whether the violation is willful or inadvertent. I find it patently unfair to subject a man to life imprisonment as a habitual offender for failing to take an affirmative action when the State has shown no indication that he had notice of such a duty. Garrison should not be prosecuted for "wholly passive" conduct when there was "an absence of 'circumstances that should alert [Garrison] to the consequences of his deed.'" *Denis*, 297 F.3d at 29.

¶68.    The scenario before this Court is markedly different from the one presented to the United States Supreme Court in *Smith*. First of all, the respondents challenging Alaska's registration law in *Smith* knew of the registration requirement and were merely seeking to avoid complying with the law, whereas here, Garrison has been subjected to a criminal prosecution for failing to register and has suffered an actual injury in the form of a felony conviction. Also, Alaska has separated the crime of failure to register as a sex offender into first and second degree offenses (second degree violation is a misdemeanor while a first degree violation is a class C felony) and requires a measure of culpability. In Alaska, an offender commits a second degree violation if he/she "knowingly" fails to comply with the registration and notification requirements. A person commits a first degree violation in Alaska if he/she has previously violated the registration law or violates the registration law

38

with an intent to escape detection or identification in order to facilitate the commission of a sex offense.

¶69. Mississippi, on the other hand, has no knowledge or intent requirement that must be proven in order to find a violation of its registration laws. Mississippi also subjects all violators of its registration laws to the same potential punishment, regardless of whether the registration violation is a first or subsequent offense and regardless of whether the violation was willful or unintentional. Therefore, the Mississippi Sex Offenders Registration Law has the effect of being an excessive punishment when applied to Garrison, since the State introduced no evidence at trial to show that he had notice of his initial duty to register or that his failure to register was done willfully or knowingly. It is unfair that a man who has served his time, been released, and appears to have committed no further criminal violations, could be subjected to a life sentence in prison merely for failing to complete a registration form, when there is no evidence that he was aware of his duty to register. A duty which arose after he was released from prison.

¶70. Similar to Alaska, most other states have either included some sort of culpability requirement in their registration laws or prescribed different punishments for the number/degree of violations, so that those laws do not have as harsh an effect on an initial violator such as Garrison (who maintains he had no knowledge of his duty to register) as do the effects of Mississippi's law.[9] Since this statutory scheme does not include a more

---

[9] See Ala. Code § 15-20-25.3 (making it a Class C felony for a sexually violent predator to intentionally fail to comply with provisions of Community Notification Act); Cal. Penal Code § 290(g)(2) (making it a felony to wilfully violate registration requirements); Colo. Rev. Stat. Ann. § 18-3-412.5(2)-(3) (differentiating between

sufficient notice requirement or a sentencing structure which prevents first-time violators

"felony" and "misdemeanor" failure to register offenses); Del. Code Ann. tit. 11 § 4120 (making it a Class G felony for person who knowingly or recklessly fails to register as sex offender); D.C. Code Ann. § 22-4105 (punishing willful violation of registration requirements); Fla. Stat. Ann. § 772.21(10)(e) (allowing sexual predator to assert lack of notice as defense to first offense for failure to register but not a subsequent offense); Haw. Rev. Stat. § 846E-9(b)-(c) (making it a Class C felony for intentionally or knowingly failing to register as a sex offender while making it a misdemeanor for recklessly failing to register); Ind. Code Ann. § 5-2-12-9 (making it a felony to knowingly or intentionally fail to register); Iowa Code Ann. § 692A.7 (violating general registration requirements is an aggravated misdemeanor for first offense and a Class D felony for a second or subsequent offense); 2006 Ky. Acts 182 (making it a Class D felony for first offense and a Class C felony for subsequent offense for knowingly violating registration requirements); Md. Code. Ann., Crim. Proc. § 11-721 (knowingly failing to register is a misdemeanor); Mass. Gen. Laws ch. 6 § 178H (knowingly failing to register is violation of statute); Mich. Comp. Law Ann. § 28.729 (willfully violating registration requirements is a felony); Minn. Stat. Ann. § 243.166 (knowing violation of registration provisions is a felony); Mont. Code Ann. § 46-23-507 (making it a criminal violation for knowingly failing to register); N.H. Rev. Stat. Ann. § 651-B:9 (prescribing violations as either a negligent or knowing failure to comply with possible penalties of misdemeanor of felony conviction); N.M. Stat. Ann. § 29-11A-4 (making it a fourth degree felony for willfully or knowingly failing to comply with statute and a third degree felony for subsequent violation); N.Y. Correct. Law § 168-t (making failure to register a misdemeanor for first offense and Class D felony for second offense); Or. Rev. Stat. § 181.599 (making it a violation for person who has knowledge of duty to report but fails to do so); 18 Pa. Cons. Stat. Ann. § 4915(a) (knowingly failing to register is violation of statute); R.I. Gen. Laws § 11-37.1-10 (knowingly failing to register is a felony); S.C. Code Ann. § 23-3-470 (making  first of second offense a misdemeanor and a third or subsequent offense a felony for failure to register); Tenn. Code Ann. § 40-39-208 (knowingly violating duty to register is a crime); 2006 Utah Laws 269 (knowingly failing to register is punished either as a third degree felony or class A misdemeanor based on underlying conviction); Vt. Stat. Ann. tit. 13, § 5409 (knowingly failing to comply with registration laws is violation of statute); 2006 Va. Acts ch. 857 (knowingly failing to register can subject offender either to Class 1 misdemeanor or Class 6 felony based upon underlying conviction); Wash. Rev. Code Ann. § 9A.44.130 (knowingly failing to comply with registration requirements subjects offender to either class C felony or gross misdemeanor based on underlying conviction); W. Va. Code Ann. § 15-12-8 (knowingly failing to register or provide false information is misdemeanor for first offense, felony for subsequent offenses); Wis. Stat. Ann. § 301.45(6) (making it a Class H felony to knowingly violate registration requirements); Wyo. Stat. Ann. § 7-19-307 (knowingly failing to register subjects violator to high misdemeanor for first offense and felony for subsequent offense).

such as Garrison from the possibility of life imprisonment without possibility of parole (based upon habitual offender status), I would find that the Mississippi Sex Offenders Registration Act is an excessive ex post facto punishment when applied to Garrison, in violation of both the state and federal constitutions. *See* U.S. Const. art. I, § 3, cl. 3; Miss. Const. art. 3, § 16.

¶71.  Accordingly, if the Legislature intended for Garrison to receive the same actual notice that it intended for all other offenders, then, based on the similarities of the Mississippi and Alaska registration laws, the stated intent of both schemes, and the *Smith* Court's finding regarding the legislative intent of the Alaska registration law, I would find that the Mississippi Legislature expressed a clear intent to create a civil, regulatory scheme, rather than a penal law, in enacting the Mississippi Sex Offenders Registration Law. Further, if the Legislature intended for Garrison to receive the same actual notice that it intended for all other offenders, Garrison's failure to receive notice was clearly a due process violation.

¶72.  There is an additional argument that the Mississippi sex offender registration laws do not even apply to offenders such as Garrison. Under Miss. Code Ann. § 45-33-23(d), "'[r]egistration' means providing information to the appropriate agency within the timeframe specified as required by this chapter." Further, Miss. Code Ann. § 45-33-23(f) provides:

> "Responsible agency" is defined as the person or government entity whose duty it is to obtain information from a criminal sex offender upon conviction and to transmit that information to the Mississippi Department of Public Safety.
>
> (i) For a criminal sex offender being released from the custody of the Department of Corrections, the responsible agency is the Department of Corrections.

41

(ii) For a criminal sex offender being released from a county jail, the responsible agency is the sheriff of that county.

(iii) For a criminal sex offender being released from a municipal jail, the responsible agency is the police department of that municipality.

(iv) For a sex offender in the custody of youth court, the responsible agency is the youth court.

(v) For a criminal sex offender who is being placed on probation, including conditional discharge or unconditional discharge, without any sentence of incarceration, the responsible agency is the sentencing court.

(vi) For an offender who has been committed to a mental institution following an acquittal by reason of insanity, the responsible agency is the facility from which the offender is released. Specifically, the director of said facility shall notify the Department of Public Safety prior to the offender's release.

(vii) For a criminal sex offender who is being released from a jurisdiction outside this state or who has a prior conviction in another state and who is to reside in this state, the responsible agency is the Department of Public Safety.

Miss. Code Ann. § 45-33-23(f). Clearly, the State has a duty to obtain initial registration information from sex offenders. This provision sets out the agencies responsible for obtaining registration information from the various offenders included in the statute. Garrison's class of offender is not included.

¶73. The majority of this Court offers some illusory relief by granting Garrison a new trial. Thus, the majority gives the State a second opportunity to prove what the State could not prove at the first trial. The issue of notice was raised at trial, and the court erroneously found that constructive notice was sufficient. The State was only able to offer testimony that there had been news coverage regarding sex offender registration laws. Notwithstanding that, assuming our statutes are intended to apply to Garrison, actual notice is required. Nevertheless, the testimony offered at trial was insufficient to establish even constructive

42

notice. Before this Court is an issue regarding the denial of a motion for JNOV under a sufficiency of the evidence standard. The State should not now be given a second bite at the apple. Further, as the evidence at trial was insufficient to establish that Garrison received notice, this matter should be reversed and rendered.

II. **Whether the trial court determined facts giving rise to Garrison's lifetime habitual status improperly in light of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).**

¶74. The majority cites *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), in its analysis of this issue. Both *Blakely* and *Apprendi* dealt with sentence enhancements pursuant to state criminal statutes. In *Apprendi*, the United States Supreme Court held that the U.S. Constitution requires that any fact, other than a prior conviction, which "increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Subsequently, in *Blakely*, the Court held, pursuant to the Sixth Amendment right to a jury trial, that other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt.

¶75. While attempting to distinguish *Blakely*, the majority incorrectly states (¶14) that "[i]n the case sub judice, the trial court neither undertook, nor made separate findings of fact related to the crime of failure to register as a sex offender. The post jury verdict hearing conducted by the trial judge was relegated to proof regarding prior convictions for three

43

separate felonies, all to which Garrison had pled guilty." I disagree. The trial court did make separate findings of fact with regard to whether Garrison was a habitual offender. However, it is not necessary to determine the applicability of *Blakely*, *Apprendi* or *Almendarez-Torres* as this issue can clearly be resolved pursuant to our statute. Further, the United States Supreme Court has repeatedly indicated that *Almendarez-Torres* was incorrectly decided. *See Apprendi*, 530 U.S. at 489. *See also Rangel-Reyes v. United States,* 126 S.Ct. 2873, 165 L.Ed.2d 910 (2006).

¶76. Here, the pertinent sentencing statute states:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon **charges separately brought arising out of separate incidents at different times** and who shall have been **sentenced to and served separate terms of one (1) year or more** in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-83 (2000) (emphasis added).

¶77. The record in this matter reveals that there is only one prior conviction which can be counted for purposes of a determination of Garrison's habitual status. The only conviction which can be properly counted is that one in which Garrison was convicted for two counts of armed robbery and one count of rape. The majority cites numerous cases in which the defendants committed multiple crimes against multiple victims at different times. The majority has failed to cite a single case which supports its proposition that the armed

44

robberies and rape should count as separate offenses for purposes of determining habitual offender status.

¶78. In *Pittman v. State*, 570 So.2d 1205 (Miss. 1990), Pittman was found to be habitual because of two prior convictions including burglary of an elementary school and grand larceny of three televisions from a second elementary school. In analyzing the issue, this Court stated: "Separateness and difference in time seem central to our search." *Id.* at 1206. Further:

> Three separate criminal acts suggest a likely-to-be-repeated habit of behavior such that the community ought intervene. But before such behavior should be labeled habitual, it would seem that the events should be sufficiently separate that the offender's criminal passions may have cooled so that he has time to reflect, and if after such an interval the individual forms and actualizes a new criminal design, and then does so a third time, he should be met with all of the power of the public force. Conversely, two offenses committed in rapid succession do not suggest the same repetitiveness of criminal design such that the offender may be thought predictably habitual thereafter, or deserving of severe sanction.

*Id.* In *Burt v. State*, 493 So.2d 1325 (Miss. 1986), Burt was a habitual offender based on prior convictions of burglarizing two separate houses owned by two different people. In *Jackson v. State*, 518 So.2d 1219 (Miss. 1988), Jackson committed crimes that "arose out of separate incidents at different times" over the course of a couple of days. *Id*. at 1219-20. *Crawley v. State*, 423 So.2d 128 (Miss. 1982), involved an entirely separate issue of whether the third offense had to actually take place after the prior convictions. In *Nicolaou v. State*, 534 So.2d 168 (Miss. 1988), Nicolaou murdered two men, took the car of one of the victims, subsequently robbed a convenience store and then kidnapped two females. The "murders and kidnappings occurred at different times and different places, and clearly were two

45

separate 'incidents.'" ***Id.*** at 173.  Clearly, all five of the cases cited by the majority  are irrelevant or  inapplicable to the instant case.  The armed robberies and rape occurred against the same two victims at the same time in the same location.  Based on the statute, the armed robberies and rape count as only one conviction for purposes of determining habitual offender status.

¶79.    The majority likewise erroneously relies on two convictions for uttering forgery.  Garrison was convicted of uttering forgery in state court, but failed to serve one year or more for purposes of the habitual offender statute.  The State conceded at trial that Garrison did not serve one year or more on the state conviction for uttering forgery.  During the hearing on Garrison's habitual offender status, the prosecutor stated that Garrison was convicted in state court on October 16, 1975, and paroled on August 26, 1976, to begin serving his federal conviction.  By the State's own admission, Garrison served less than the required one year.  Further, a document from the Mississippi Department of Corrections in the record indicates that Garrison served only 61 days on this state conviction.  This conviction does not qualify as a prior conviction for the purpose of determining habitual offender status.

¶80.    On November 28, 1975, Garrison was convicted in federal court of uttering forgery as a youth offender under the Federal Youth Corrections Act.  This conviction also does not apply.  Under the Federal Youth Corrections Act, Garrison was guilty of committing a delinquent act.  By definition, a delinquent act is any act, which if committed by an adult, is designated as a crime.  Inasmuch as Garrison was sentenced as a youth offender under the Federal Youth Corrections Act, these offenses were not considered crimes under federal law.

Hence, they cannot be counted as offenses for purposes of determining an offender's habitual offender status. The majority erroneously states (¶18) that "Garrison's prior federal and state felony convictions for uttering a forgery ran concurrently, and Garrison was incarcerated in a federal and state penitentiary for more than one year . . . ." The State conceded at trial that Garrison only served a total of 18 months for both the state and federal convictions combined. As established by the judgment of conviction contained in the record, Garrison's state sentence was not concurrent with his federal sentence - presumably because he had not yet been convicted of anything in federal court at the time he was sentenced in state court. Garrison's federal sentence was ordered to be concurrent with his state sentence. However, Garrison's federal sentence was as a youth offender under the Federal Youth Corrections Act and clearly does not qualify as a prior conviction for purposes of determining habitual offender status.

## CONCLUSION

¶81. The majority's decision is nothing more than a futile attempt to provide a substitute for justice. There is no substitute for justice. The only just result here is finding that a man who pleaded guilty to armed robbery and rape in 1978, served his sentence and was released from prison eight years before the passage of a statute, should not now be sentenced to serve the remainder of his natural life in prison for failing to comply with that statute. The majority opinion defies logic, reason and justice. It could not be any clearer that, not only was Garrison denied due process, but the trial court's decision is an ex post facto application of the statute. Yet a majority of this Court refuses to apply that age-old doctrine in this case.

47

There is no jurisprudence which supports the majority's unprecedented, unjust and unfair decision.

¶82.    Because the Mississippi Sex Offenders Registration Law is an unconstitutional ex post facto law when applied to Garrison and because the failure to provide proper notice resulted in a denial of his constitutional right to due process, I would find that the trial court erred in denying Garrison's JNOV motion, and I would reverse his conviction and sentence and render judgment discharging Garrison.  Therefore, I respectfully concur in part and dissent in part.

**DIAZ, J., JOINS THIS OPINION.  DICKINSON, J., JOINS THIS OPINION IN PART.**